**TOTES, INCORPORATED, Plaintiff,**

v.

**UNITED STATES, Defendant.**

**Court No. 91–06–00423 (BN).**

United States Court of International Trade.

Sept. 30, 1994.

---

Neville, Peterson & Williams, John M. Peterson and Peter J. Allen, New York City, for plaintiff.

Frank W. Hunger, Asst. Atty. Gen., Joseph I. Liebman, Attorney-in-Charge, Intern. Trade Field Office, John J. Mahon, U.S. Dept. of Justice, Civ. Div., New York City, for defendant.

## OPINION AND ORDER

NEWMAN, Senior Judge:

### Introduction

Totes, Incorporated ("Totes" or "plaintiff") imported certain merchandise from Hong Kong at the port of Seattle, Washington in November 1990 known as the "Totes Trunk Organizer," style No. 3430R ("trunk organizer"). Plaintiff brings this "test case" (*see* Slip Op. 92–133) challenging the tariff classification of its trunk organizer by the United States Customs Service ("Customs") upon liquidation of the entries.

Jurisdiction rests on 28 U.S.C. § 1581(a), and consequently, this action is before the court for *de novo* review. 28 U.S.C. § 2640(a)(1). Currently, *sub judice* are cross-motions for summary judgment pursuant to CIT Rule 56. For the reasons stated hereinafter, plaintiff's motion for summary

judgment is denied; defendant's cross-motion for summary judgment of dismissal is granted.

In liquidation of the subject entries, the merchandise was classified by Customs under subheading 4202.92.9020, Harmonized Tariff Schedule of the United States (1990) ("HTSUS"), *infra,* and assessed the schedule rate of 20 per centum ad valorem.

The HTSUS provisions relevant to the classification of the merchandise by Customs read (emphasis added):

> Trunks, suitcases, vanity cases, attache cases, brief cases, school satchels, spectacle cases, binocular cases, camera cases, musical instrument cases, gun cases, holsters and *similar containers;* travelling bags, toiletry bags, knapsacks and backpacks, handbags, shopping bags, wallets, purses, map cases, cigarette cases, tobacco pouches, tool bags, sports bags, bottle cases, jewelry boxes, powder cases, cutlery cases and *similar containers,* of leather or of composition leather, or plastic sheeting, of textile materials, of vulcanized fiber or of paper board, or wholly or mainly covered with such materials:

```
        *       *       *
Other
        *       *       *
   With outer surface of plastic sheeting or of
   textile materials:
        *       *       *
      Other
        *       *       *
        Other:
   With outer surfaces of textile materials
        *       *       *
          Other:
            Of man-made
            fibers..........  20%
```

Conceding that the trunk organizers are not described *eo nomine* by any of the exemplars listed in Heading 4202, Customs classified the imports as "similar containers" by application of *ejusdem generis,* a well established rule of statutory construction, positing that the trunk organizers are of the same class or kind of containers as the listed exemplars, particularly tool bags.

Totes maintains that the trunk organizers are not similar to tool bags in particular, or even of the same class or kind as the exemplar containers in Heading 4202. Therefore,

claims plaintiff, Customs' inclusion of the imports in "similar containers" predicated on *ejusdem generis* is erroneous. It is further contended that the trunk organizers are used solely or principally in motor vehicles for the storage of tools and supplies normally stored in the trunk, and hence, the merchandise, not being more specifically provided for elsewhere in the tariff, is properly dutiable at the rate of 3.1 percent ad valorem under the provision in HTSUS subheading 8708.99.50 for "Other" parts and accessories of motor vehicles of headings 8701 to 8705. Alternatively, Totes advances the claimed classification that the merchandise is dutiable under HTSUS subheading 6307.90.9986, as "Other" made up articles of textiles.

### The facts

In support of their respective cross-motions, the parties have stipulated and agreed upon a statement of undisputed material facts as to the composition, design, marketing and intended uses of the imports. Further, a representative sample of the merchandise (as depicted in the Appendix), the box in which it is marketed at retail and Totes' specifications, have also been submitted as exhibits A and B. Accordingly, the court assumes for purposes of the cross-motions that the sample and exhibits constitute uncontroverted evidence of what they show and serve to supplement the stipulated facts.

Based upon the record before the court on the cross-motions, including the exhibits, below are set forth the undisputed material facts:

1. The trunk organizer is a rectangularly shaped bag or case that measures approximately 19½ inches in length, 11½ inches in width, 8 inches in height, and has a three-sided zippered flap or closure covering the top of the bag and nylon web carrying handles. The case is composed of a woven nylon fabric with a coating impervious to penetration by oil or water.

2. The bottom of the trunk organizer has seams that are reinforced and sealed with polyvinyl chloride piping measuring approximately 5 millimeters in diameter. These

seams completely encircle the bottom of the bag.

3. Sewn to the bottom surface of each trunk organizer and extending the width of the case are two one-inch wide velcro strips intended for gripping carpeted surfaces in the trunk interior, but permitting the trunk organizer to be easily detached and removed from the carpeting for carrying the case by its handles.

4. A trunk organizer's interior may be subdivided into as many as three discrete compartments by inserting into the bag the accompanying PVC covered cardboard dividers, which are held in position by metal snaps.

5. Totes' printed representations on its retail box (exhibit A) state that the trunk organizers have "Hefty web handles for easy carrying." These carrying handles or straps are attached to the front and back of the trunk organizer, and they measure approximately 20 inches from the points where they are joined to the case by stitching.

6. The printed representations on the retail box (exhibit A), also state that the trunk organizer "is designed to store trunk necessities (jumper cables, tire inflator, windshield washer fluid, etc.) in neat, orderly fashion."

7. In addition to its storage function, the trunk organizer is designed for carrying various automotive related tools and supplies, such as jumper cables, ice scraper, tire inflator and other tools, oil, windshield wiper fluid, antifreeze, cleaning and other fluids. The trunk organizer is capable of carrying any articles that will fit within the dimensions of the compartments of the bag.

8. The trunk organizers are sold by Totes to large retail stores like Sears, Roebuck & Company and J.C. Penney, and those stores display and market the bags to retail customers in their gift and accessories department or automotive department.

9. The trunk organizers are part of the Totes "Auto Club" product line and are marketed for use in motor vehicles for the purposes stated above.

### Discussion

As previously noted, this case is before the court on cross-motions for summary judgment. Fundamentally, summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to a judgment in its favor as a matter of law. CIT Rule 56(d). The court finds that there are no genuine factual issues for trial that are material to the resolution of the claims raised in this action, and the issues of law raised may appropriately be resolved by summary judgment. *Lynteq, Inc. v. United States*, 976 F.2d 693, 695–96 (Fed.Cir.1992); *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387 (Fed.Cir.1987); *Texas Apparel Co. v. United States*, 12 CIT 1002, 698 F.Supp. 932 (1988), *aff'd per curiam*, 883 F.2d 66 (Fed.Cir.1989), *cert. denied*, 493 U.S. 1024, 110 S.Ct. 728, 107 L.Ed.2d 747 (1990).

Defendant insists that the imports are of the same class or kind of containers as the exemplars named in Heading 4202, particularly tool bags, since they are the same kind of container and serve the same purpose as the named exemplars—organizing, storing, protecting and carrying various items—and accordingly, defendant urges the application of the rule of *ejusdem generis* to construction of the phrase "similar containers" in Heading 4202.[1]

In support of its argument, defendant cites *DRI Industries, Inc. v. United States*, 11 CIT 97, 657 F.Supp. 528 (1987) (Carman, J.), *aff'd*, 832 F.2d 155 (Fed.Cir.1987). *DRI* involved the tool chest portion of a "Tool Locker" comprised of the tool chest and a cabinet, and plaintiff's expert witnesses all opined that the primary purpose of the tool chest and cabinet was for storing and organizing tools. Some witnesses testified that the tool

---

1. Although the trunk organizers are claimed by defendant to have the same essential characteristics and purposes as possessed by all of the exemplar containers in Heading 4202 (and thus are claimed to be "similar containers" under the rule of *ejusdem generis* ), defendant identifies the tool bags as the most similar exemplar inasmuch as the trunk organizers serve the purpose of organizing, storing and carrying, *inter alia,* automotive related tools. Plaintiff's claim that defendant's *ejusdem generis* argument is predicated solely on the trunk organizer's resemblance to the tool bag exemplar is without merit.

chest, which was designed to be carried or transported, had a limited or restricted portability. Holding that the tool chests were properly classified as luggage under the general provision for "like containers and cases" following the enumerated luggage exemplars listed in Schedule 7, Part 1, Subpart D, Headnote 2(a)(ii), TSUS, the *DRI* trial court observed that the tool chests were *ejusdem generis* with the exemplars. Thus, the court observed:

The exemplars listed in 2(a)(ii) represent a category of containers or cases which are designed to store, organize and protect those contents from which the containers derive their name.

11 CIT at 102, 657 F.Supp. at 532.

Defendant has further called to the court's attention *E.C. McAfee & Co. v. United States,* 12 CIT 648, 1988 WL 76373 (1988) (Carman, J.), which invoked the rule of *ejusdem generis* in the classification as "like containers and cases" under the luggage provision in the TSUS an "odds and ends" compartmentalized tool case known as a Rolykit which was "light, portable and durable enough to be carried, * * * designed to store many items in an organized fashion [and] * * * designed with a built in handle for not merely storage but transportability." 12 CIT at 656. Focusing on the purpose of the articles, the court noted: "The Rolykit is clearly designed for the purpose of organizing, storing, protecting and packing various items." 12 CIT at 653. *McAfee* noted that while presumably an "odds and ends" case, the article could also be used as a tool case or hardware case. *Id.,* at 656. Finding that the merchandise possessed characteristics in common with the luggage articles enumerated in Headnote 2(a)(ii), Subpart D, Part 1, Schedule 7, TSUS, the court held that the merchandise was properly classified as luggage under item 706.62, TSUS. *Id.*

In opposing the inclusion of the trunk organizers within the "similar containers" provision of Heading 4202 by application of *ejusdem generis,* and attempting to distinguish *DRI* and *McAfee* from the facts of the current case, Totes relies heavily on the rationale of *Sports Graphics, Inc. v. United States,* 24 F.3d 1390 (Fed.Cir.1994). With reference to the rule of *ejusdem generis* as applied to the TSUS luggage provision, the Federal Circuit observed:

Under the rule of *ejusdem generis,* which means "of the same kind," where an enumeration of specific things is followed by a general word or phrase, the general word or phrase is held to refer to things of the same kind as those specified. [citation omitted.] As applicable to classification cases, *ejusdem generis* requires that the imported merchandise possess the essential characteristics or purposes that unite the articles enumerated *eo nomine* in order to be classified under the general terms. [citation omitted.]

24 F.3d at 1392.

In determining whether "Chill" coolers used for the cold storage and preservation of food and beverages over a period of time fell within the TSUS provision for luggage, the appellate court in *Sports Graphics* viewed the *purpose* of the imported coolers for storage of food and beverages as the critical consideration, and found that merchandise with such food preservation use "has a different purpose, * * * [than that served by the luggage exemplars] which precludes the merchandise from being *ejusdem generis* with the [luggage] exemplars listed in * * * the luggage provision." 24 F.3d at 1393.

Pointing up the principal function of the trunk organizers, *viz.,* to organize and store automotive tools and supplies in the trunk of a motor vehicle rather than transport them from place to place, Totes claims an analogy of the trunk organizer's automotive supplies storage function to the Chill coolers' function of food preservation and the applicability of the *Sports Graphics* rationale rejecting *ejusdem generis* with the luggage exemplars under the TSUS provision. Therefore, Totes argues that trunk storage for supplies and protection of the trunk from oil and water are purposes completely extraneous to the common features and purposes of the Heading 4202 exemplars, negating *ejusdem generis* with such exemplars.

Moreover, insists Totes, *DRI* and *McAffee* are inapposite here since, unlike the trunk organizers, the tool chests and Rolykits pos-

sessed no utility or functions other than those served by luggage—to organize, store, protect and carry various items—and unlike the trunk organizers, the tool chests and Rolykits in *DRI* and *McAffee* possessed no utility or use specifically described by the TSUS provisions claimed applicable by the importers. As previously noted, Totes claims that the trunk organizers are specifically described by the tariff provision for automobile parts and accessories.

■ Following the rationale of the above-cited cases involving the TSUS luggage provisions and the application of *ejusdem generis,* the specific issue of law to be addressed in the current case is whether, on the basis of the undisputed material facts before the court, the trunk organizers possess the essential characteristics of or serve a common purpose like that served by the exemplars in Heading 4202, and hence by the operation of *ejusdem generis* fall within the purview of "similar containers."

The court holds that the essential characteristics and purpose of the Heading 4202 exemplars are the very ones that the courts identified with reference to the TSUS luggage provisions in *DRI* and *McAffee, viz.,* to organize, store, protect and carry various items. Clearly, the trunk organizers possess those essential characteristics and purpose; their low profile, velcro strips, and oil and water resistant fabric incidental to their design for use in the trunk of a motor vehicle, do not alter the *essential* characteristics and purpose of the imports so as to negate *ejusdem generis* with the Heading 4202 exemplars.

As to the broad reach of the residual provision for "similar containers" in Heading 4202 by virtue of *ejusdem generis,* this writer finds it significant that the individual exemplars are disparate in their physical characteristics, purposes and uses ranging from such small containers as spectacle and cigarette cases, wallets, and tobacco pouches to such large containers as trunks and suitcases. Accordingly, Totes' strenuous effort to distinguish the size and specific purposes of the trunk organizers from tool bags is no more effective in negating *ejusdem generis* under Heading 4202 than pointing out such distinctions between tool bags on the one hand and jewelry boxes or spectacle cases on the other.

■ As is evident from the obvious physical and use disparities of the tool chests in *DRI* and the Rolykits in *McAffee* from the golf bags, camera cases and other TSUS luggage exemplars, the rule of *ejusdem generis* requires only that the merchandise possess the essential character or purpose *running through all of the enumerated exemplars.* See e.g., *Izod Outerwear v. United States,* 9 CIT 309, 1985 WL 25770 (1985) ("[a]pplying *ejusdem generis* to item 376.56, TSUS, the Court must determine what characteristics are shared by garments designed for 'rainwear,' 'hunting,' and 'fishing', and whether the jackets have these characteristics"; however, to be classifiable under item 376.56 for garments designed for "similar uses," garments need not (like rainwear) be made of fabric sufficiently waterproof to pass the "cup test").

Insofar as the trunk organizers serve the purposes of organization, holding, storage and protection of articles, they fall within the class or kind of articles listed as exemplars in Heading 4202, especially jewelry boxes and cutlery cases that serve mainly to facilitate an organized separation, protection, storage or holding of jewelry or cutlery items that might otherwise simply be placed in a dresser drawer or kitchen cabinet respectively in an unorganized manner. Like the tools and supplies temporarily removed from the trunk organizers for use in automotive maintenance, jewelry and cutlery may be removed from their boxes or cases for use and then returned for storage and protection in an organized fashion, without moving the containers from their location.

To the extent that some of the exemplars in Heading 4202 are designed for carrying their contents from place to place, it is significant that, as the parties have stipulated, "[t]he Totes Trunk Organizer *is designed for carrying* the type of articles described in paragraph 11 of these undisputed facts [*viz.,* tools, oil, antifreeze, windshield washer fluids]" (emphasis added). The carpet-gripping velcro strips serve to prevent the orga-

nizers from shifting position while placed in the trunk of a vehicle, but when desired by the user, permit easy detachment and removal of the bags from the trunk for carrying; the velcro strips do not impair the trunk organizer's featured design for carrying the contents, and in fact complement and facilitate the carrying feature of the trunk organizer.

Plaintiff's effort to denigrate the carrying capacity and function of the imports is expressly contradicted by its stipulation, *supra*. Indeed, plaintiff's attempt to minimize the carrying capacity of the imports is further undermined by the parties' stipulation that "the box in which it [trunk organizer] is sold states that the organizer has hefty web handles for *easy carrying*" (stipulated facts, par. 11, emphasis added). Additionally, Totes' Product Performance Specifications pertinent to the trunk organizers' handles refute Totes' attempt to divert attention away from the design and capacity of the imports for carrying their contents. Those specifications read (emphasis added):

J. Handles:

1. Handles *must* be present, properly located and of the correct length as specified on the engineering drawing.

2. *Must* withstand a disassembly pull force of 50 lbs (emphasis added).

■ Counsel for plaintiff insists that the straps or handles of the trunk organizers are designed simply to permit the user to shift the position of the bag within the confines of the cargo compartment, or to lift the organizer out of the trunk to gain access to its contents or to the trunk area itself. Importantly, however, there is no stipulation of fact

or any other evidentiary matter submitted on these cross-motions supporting such *factual assertion* of Totes' counsel. Fundamentally, of course, argument of counsel is not evidence before the court in support of a motion, and obviously, arguments based on asserted facts at variance with those stipulated by the parties will not be considered by the court.

In any event, whether portability of the import is a primary or ancillary feature, is not legally controlling in its classification as "similar containers" under Heading 4202.[2] Thus, even assuming that the trunk organizer's portability or design for carrying is ancillary to its storage purpose, the trunk organizers are nonetheless *ejusdem generis* with the exemplar containers in Heading 4202— precisely the purpose of jewelry boxes that are used primarily to organize, store and protect articles, and only incidentally (if at all) to transport the contents. As noted in *DRI*, regarding the tool chest in issue:

The tool chest may not be used by a tradesman to carry from place to place in his profession, but it is clearly contemplated the chest will be used by the average home handyman in a transportable manner as his needs require. *Although the primary design may not be tailored to this portable function, the portability is not the only factor in the classification of the tool chest. The question is not only one of portability but whether or not the item at issue does have characteristics in common with the enumerated articles. This Court holds that it does.*

11 CIT at 103 (emphasis added).

■ Following the rationale of *DRI* and *McAffee* under the TSUS luggage provision,

---

**2.** Under TSUS Headnote 2(a)(ii) of Schedule 7, Part 1, Subpart D, the term "luggage" included containers and cases "designed to be carried with the person." While the trunk organizers are stipulated to be designed to be carried, no such express design for carrying requirement exists in Heading 4202. Moreover, the court may take judicial notice that common types of luggage—men's *suit* bags or ladies' *dress* bags— are used both to carry or transport garments in a neat and organized manner and/or to store and protect the garments while in the trunk of a car or while the bags are hung in a closet. The fact that most of the time such garment bags may be utilized for storing garments in the trunk of a

motor vehicle or closet does not make such bags any less "similar containers" in Heading 4202.

Many fitted or compartmentalized cases, bags or other containers among the exemplars in Heading 4202 are routinely used to carry with the person a specific article or related articles, *viz.*, cameras, lenses film, etc.; golf clubs, balls, shoes, tees, etc; and tennis rackets and balls, and are also used to store and protect these articles after they are reinstalled into their containers.

The short of the matter is: whether the carrying feature or organized storage feature of the container is the primary or secondary use is simply not a material issue in their classification under Heading 4202.

this court, too, expressly rejects as a requirement for classification by *ejusdem generis* as "similar containers" under Heading 4202 that the principal design feature of the merchandise be portability or transportation of the contents. As stressed in *McAffee*, "[t]he important question at issue is whether or not the [merchandise] has *characteristics in common* with the enumerated articles" (emphasis in original). 12 CIT at 655, citing *DRI Industries*, 657 F.Supp. at 533.

■ Totes' additional contention that the trunk organizers are not "similar containers" within the purview of Heading 4202 because they are not tool bags *per se* (which defendant concedes) is of no avail in defeating classification pursuant to Heading 4202. "The question is [not whether the import is a tool bag or similar only to a tool bag, but] * * * whether or not the item at issue does have characteristics in common with [all] the enumerated articles [in Heading 4202]." *DRI Industries*, 657 F.Supp. at 533. *See also Adolco Trading Co. v. United States*, 71 Cust.Ct. 145, 154, C.D. 4487 (1973). Precise functional equivalence to, or commercial interchangeability with, any one particular exemplar enumerated in the Heading plainly is not required by the rule of *ejusdem generis*. More, Totes' argument that the trunk organizers are excluded from Heading 4202 because they are not specially shaped or internally fitted to accommodate particular tools (*see* 2 *Explanatory Notes* at 613) is rejected.

■ Plaintiff's contention that the trunk organizers are not classifiable under Heading 4202 because they are not sold in the luggage departments of stores (there is no stipulation to such fact) is irrelevant. The court may take judicial notice that such exemplar items as spectacle cases, binocular cases, gun cases, camera cases, shopping bags, tool bags, jewelry boxes, etc. would very unlikely be found in typical luggage departments.

Furthermore, plaintiff's argument that the placement of the carrying handles on the opposite sides of the trunk organizers is atypical of the exemplar containers in Heading 4202 is likewise meritless. The court may take judicial notice that such articles as trunks, travelling bags, backpacks, handbags, shopping bags, tool bags, and sports bags commonly provide handles on the opposite sides of the articles.

Plaintiff's contention that the trunk organizers are excluded from Heading 4202 because they are not designed for carrying clothing and other personal effects during travel, citing the HTSUS Chapter 42, Additional U.S. Note 1 reference to "travel, sports and similar bags" is irrelevant. Defendant makes no claim that the trunk organizers are classifiable as "travel, sports and similar bags."

Plaintiff asserts that "it is unnecessary for this Court to consider defendant's arguments concerning whether the Trunk Organizer is *ejusdem generis* with the exemplars of heading 4202" since subheading 8708.99.50 is a "use" provision, which is always more specific than an *eo nomine* provision like tool bags.

■ First, the court agrees with defendant that the express exclusion from parts and accessories of motor vehicles of articles covered more specifically by another heading elsewhere in the Nomenclature, *e.g.*, tool bags, *see* General Headnote 111(c), Section XVII of the *Explanatory Notes* to HTS, demonstrates intent to also exclude from parts and accessories of motor vehicles containers *similar* to tool bags. Such intent is buttressed by prefacing the excluded list of articles (which includes tool bags), with *e.g.*, which means that tool bags are listed as only *an example* of the type of container that might be used in connection with a motor vehicle that must be regarded as more specifically provided for under Heading 4202. *A fortiori*, containers similar to tool bags are intended to be excluded from parts and accessories covered more specifically in the Nomenclature.

■ Second, since the General Headnote makes the *eo nomine* provision for "tool bags" a more specific tariff provision for such bags than the "use" provision for motor vehicle parts and accessories, Totes' argument that following *United States v. Simon Saw & Steel Co.*, 51 CCPA 33, C.A.D. 834, 1964 WL 8553 (1964) a use provision must necessarily prevail over the provision for similar containers under Heading 4202 is rejected. Accord-

ingly, the court holds that predicated on *ejusdem generis,* the imported bags are more specifically classifiable under the provisions for the bags, cases and similar containers in Heading 4202 even if they are principally used as motor vehicle parts or accessories within the purview of Heading 8708.

Finally, the trunk organizers are not classifiable under the basket provision for textile articles in Subheading 6307.90.9986 because they are specifically provided for under Heading 4202, and as such, excluded from classification under Heading 6307 by the Explanatory Notes to that Heading.

### *Conclusion*

Even if describable as a passenger automobile accessory within the purview of HTSUS subheading 8708.99, as claimed by Totes, the trunk organizer is more specifically provided for as "similar containers" by operation of *ejusdem generis* under Heading 4202, and consequently, pursuant to General Note 111(c) to section XVII of the *Explanatory Notes* to HTS, they are excluded from the provision primarily claimed by Totes. *See* 4 *Explanatory Notes* at 1412 ("[p]arts and accessories, even if identifiable as articles of this Section, are **excluded** if they are covered more specifically by another heading elsewhere" in the tariff). Moreover, the imports are more specifically described under Heading 4202 than under the alternative provision claimed by plaintiff for "other made up textile articles" in subheading 6307.90.99. *See* 2 *Explanatory Notes* 867–68.

Accordingly, plaintiff's motion for summary judgment is denied, and defendant's cross-motion for summary judgment sustaining Customs' classification of the imported merchandise under subheading 4202.92.9020, HTUS, and dismissing the action is granted.

Judgment will be entered for defendant dismissing the action.

## APPENDIX