TOTES, INCORPORATED,
Plaintiff–Appellant,

v.

The UNITED STATES, Defendant–
Appellee.

No. 95–1125.

United States Court of Appeals,
Federal Circuit.

Oct. 24, 1995.

---

George W. Thompson, Neville, Peterson & Williams, New York City, argued for plaintiff-appellant. With him on the brief were John M. Peterson and Peter J. Allen.

Amy M. Rubin, Commercial Litigation Branch, Department of Justice, New York City, argued for defendant-appellee. With her on the brief were Frank W. Hunger, Assistant Attorney General, David M. Cohen, Director, and Joseph I. Liebman, Attorney in Charge, International Trade Field Office. Of counsel was Laura R. Siegal, Office of Assistant Chief Counsel, International Trade Litigation, U.S. Customs Service.

Before ARCHER, Chief Judge, NIES, and LOURIE, Circuit Judges.

LOURIE, Circuit Judge.

Totes, Incorporated appeals from the September 30, 1994 decision of the United States Court of International Trade granting the government's motion for summary judgment and holding that the United States Customs Service properly classified certain imported merchandise under subheading 4202.92.9020 of the Harmonized Tariff Schedule of the United States (1990) ("HTSUS"). *Totes, Inc. v. United States,* 865 F.Supp. 867 (Ct. Int'l Trade 1994). Because the court did not err in granting summary judgment, we affirm.

## BACKGROUND

The "Totes Trunk Organizer" is a rectangular case used to organize and store items such as motor oil, tools, and jumper cables in an automobile trunk. The case is made of a liquid-impervious nylon fabric. It has a zippered top opening, two straps at the sides which form handles, and reinforced bottom seams. Velcro strips on the bottom surface allow the case to be secured to a carpeted surface in an automobile trunk. The case's interior may be divided into three discrete storage areas using dividers that snap into place. The exterior of the Trunk Organizer bears the name "totes AUTOMOBILE CLUB." Totes markets the product as part of its Auto Club line of automobile accessories, which also includes windshield ice scrapers, emergency lights, car window shades, and dashboard memo pads.

In November 1990 Totes imported Trunk Organizers from Hong Kong to the United States. Customs classified the merchandise as a "similar container" under subheading 4202.92.9020, HTSUS, subject to a duty rate of 20% *ad valorem.* That subheading covers, with emphasis:

Trunks, suitcases, vanity cases, attache cases, briefcases, school satchels, spectacle cases, binocular cases, camera cases, musical instrument cases, gun cases, holsters and similar containers; traveling bags, toiletry bags, knapsacks and backpacks, handbags, shopping bags, wallets, purses, map cases, cigarette cases, tobacco pouches, tool bags, sports bags, bottle cases, jewelry boxes, powder cases, cutlery cases and similar containers, of leather or of composition leather, of plastic sheeting, of textile materials, of vulcanized fiber, or of paperboard, or wholly or mainly covered with such materials:

 \* \* \*

Other:

 \* \* \*

 With outer surface of plastic
 sheeting or of textile materials:

 \* \* \*

 Other:

 \* \* \*

 Other
 With outer surface of
 textile materials:

 \* \* \*

 Other:
 Of man-made
 fibers.

Totes timely filed a protest against liquidation of the merchandise, which Customs denied. Totes then challenged Customs' classification determination in the United States Court of International Trade, arguing that the product should have been classified as a motor vehicle accessory under HTSUS subheading 8708.99.50. That subheading, which carries a duty rate of 3.1% *ad valorem,* reads in relevant part as follows:

Parts and accessories of the motor vehicles of headings 8701 to 8705:

 \* \* \*

Other parts and accessories:

 \* \* \*

 Other:

 \* \* \*

 Other:

 \* \* \*

 Other.

Totes and the government cross-moved for summary judgment. Applying the principle of statutory construction known as *ejusdem generis* ("of the same kind"), the court determined that Totes' product served the essential purposes of "organization, holding, storage and protection of articles" similar to the exemplars listed under heading 4202, "especially jewelry boxes and cutlery cases that serve mainly to facilitate an organized separation, protection, storage or holding of jewelry or cutlery...." *Totes,* 865 F.Supp. at 872. Thus, the court held that Customs properly classified the product as a "similar container" under subheading 4202.92.9020, HTSUS. The court further determined that the item is excluded from classification under heading 8708 based on the Explanatory Notes to HTSUS Section XVII.[1] The Explanatory Notes state that merchandise is excluded from classification as a part or accessory under any of the headings of Section XVII if the item is more specifically classifiable elsewhere in the HTSUS. Tool bags are listed in the Explanatory Notes as an example of merchandise that is more specifically classifiable under heading 4202 than under any of the headings of Section XVII. Heading 8708 is within Section XVII. The court reasoned, therefore, that items similar to tool bags, such as the Trunk Organizer, are "more specifically classifiable under the provisions for the bags, cases and similar containers in Heading 4202 even if they are principally used as motor vehicle parts or accessories within the purview of Heading 8708." *Id.* at 875. The court granted summary judgment for the government and dismissed the case.

Totes timely appealed to this court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(5) (1988).

## DISCUSSION

 We review the Court of International Trade's grant of summary judgment for correctness as a matter of law. *Mita Copystar Am. v. United States,* 21 F.3d 1079, 1082 (Fed.Cir.1994). The meaning of a tariff classification term is also a question of law,

---

1. Customs Co–Operation Council, 4 *Harmonized Commodity Description and Coding System: Explanatory Notes* (1st ed. 1986) ("Explanatory Notes"). HTSUS Section XVII encompasses all tariff headings for "Vehicles, Aircraft, Vessels and Associated Equipment."

which we review *de novo. Id.* Determining whether merchandise comes within a particular tariff provision, as properly interpreted, is a question of fact. *Marcel Watch Co. v. United States*, 11 F.3d 1054, 1056 (Fed.Cir. 1993). Customs' classification determination is, by statute, presumed to be correct. 28 U.S.C. § 2639(a)(1) (1988). Therefore, as the party challenging the classification, Totes bears the burden of proof in this case. *See id.; see also Mita Copystar*, 21 F.3d at 1082.

Totes first argues that the Court of International Trade erred in determining that the merchandise is *ejusdem generis* with the exemplars named in subheading 4202.92.9020, HTSUS. Totes contends that the exemplars share the essential purpose or characteristic of being carried on the person or in a handbag, whereas the essential purpose of the Trunk Organizer is not to transport items but to organize and store items in an automobile trunk. Totes insists that, factually and legally, the present case resembles *Sports Graphics, Inc. v. United States*, 24 F.3d 1390 (Fed.Cir.1994), and that the trial court failed to follow our analysis in that case. The government maintains that the merchandise is *ejusdem generis* with the exemplars named in subheading 4202.92.9020 and thus is classifiable under that subheading. We agree with the government.

■ We have stated that the appropriate analysis for applying the principle of *ejusdem generis* is as follows:

> Under the rule of *ejusdem generis*, which means "of the same kind," where an enumeration of specific things is followed by a general word or phrase, the general word or phrase is held to refer to things of the same kind as those specified. As applicable to classification cases, *ejusdem generis* requires that the imported merchandise possess the essential characteristics or purposes that unite the articles enumerated *eo nomine* [by name] in order to be classified under the general terms.

*Sports Graphics*, 24 F.3d at 1392 (citation omitted).

■ The trial court accordingly determined that Totes' product shares with the containers listed *eo nomine* in subheading

4202.92.9020 the essential characteristics of organizing, storing, protecting, and carrying various items. *Totes*, 865 F.Supp. at 872. We find no error in that determination. Contrary to Totes' contention, the merchandise is not removed from classification under subheading 4202.92.9020 simply because it is intended to organize, store, and protect items associated with a motor vehicle. Many of the containers named in subheading 4202.92.9020 are used to organize, store, and protect specific items. In addition, like many of the containers listed *eo nomine* in subheading 4202.92.9020, the Trunk Organizer has straps that allow it to be carried; thus, Totes' distinction concerning portability is unpersuasive. Accordingly, we find no error in the court's determination that Customs correctly found that the merchandise is covered by the "similar containers" term in subheading 4202.92.9020, HTSUS.

Contrary to Totes' view, our decision in *Sports Graphics* does not compel a different result. In that case, the merchandise at issue ("Chill" coolers) consisted of soft-sided nylon containers having foam insulation, a zippered top, and carrying straps. The Court of International Trade held that under the Tariff Schedule of the United States ("TSUS"), the coolers were "[a]rticles chiefly used for preparing, serving, or storing food or beverages" under item 772.15, TSUS, rather than "other" articles of luggage under item 706.62, TSUS. *Sports Graphics*, 24 F.3d at 1391. On appeal, the government argued that, based on its storage capacity, the merchandise was *ejusdem generis* with the luggage articles named in item 706.62, TSUS. We disagreed, finding no error in the trial court's determination that the essential purpose of the coolers was to store food or beverages in a cold environment for a period of time. *Id.* at 1392–93. We held that "the merchandise [had] a different purpose, the storage of food or beverage, which preclude[d] the merchandise from being *ejusdem generis* with the exemplars listed in the . . . luggage provision." *Id.* at 1393. Moreover, the specific use for food was predominant over the more general description as luggage. Therefore, we affirmed the trial court's determination that the coolers were classifiable as items for storing food or bev-

erages under item 772.15, TSUS, and were not classifiable as luggage under item 706.62, TSUS. *Id.* at 1394.

In the present case, similarly, the more specific description as a "similar container" predominates over the more general description as an "accessory" of a motor vehicle. Thus, *Sports Graphics* is not to the contrary and the trial court did not err in classifying the Trunk Organizer under subheading 4202.92.9020.

Totes next argues that the merchandise is *prima facie* classifiable under subheading 8708.99.50, HTSUS, directed to "other" parts and accessories of motor vehicles. Totes further argues that, assuming that the merchandise is *prima facie* classifiable under both subheadings 4202.92.9020 and 8708.99.50, the trial court should have applied the General Rules of Interpretation[2] to classify the merchandise under the more specific provision for motor vehicle parts and accessories. Totes contends that, in determining which of two equally descriptive tariff provisions more specifically describes merchandise, courts have held that "use" provisions are more specific than *eo nomine* provisions, absent contrary legislative intent.[3] Subheading 8708.99.50 is a use provision; subheading 4202.92.9020 is an *eo nomine* provision. Thus, Totes argues, the court should have determined that subheading 8708.99.50 more specifically describes the merchandise than subheading 4202.92.9020.

In response, the government does not dispute that the merchandise is *prima facie* classifiable under both subheadings, but argues that the court correctly determined that the Explanatory Notes indicate that the merchandise is more specifically classifiable under subheading 4202.92.9020, HTSUS. Thus,

each side argues the greater specificity rule. After evaluating both arguments, we agree with the government. The competing provisions here are not equal. The tariff provision for "similar containers" more specifically describes the merchandise than the competing provision for "other accessories" of motor vehicles. "Containers," which essentially have the one principal function of containing, even though encompassing a wide variety thereof, is a more specific term than "accessory," which can include a wide variety of items having many different functions.

Moreover, the Explanatory Notes to HTSUS Section XVII implement this concept and provide as follows:

**(C) Parts and accessories covered more specifically elsewhere in the Nomenclature.**

Parts and accessories, even if identifiable as for the articles of [Section XVII], are **excluded** if they are covered more specifically by another heading elsewhere in the Nomenclature, e.g.:

(1) Profile shapes of vulcanised rubber other than hard rubber, whether or not cut to length **(heading 40.08)**.

(2) Transmission belts of vulcanised rubber **(heading 40.10)**.

(3) Rubber tyres, interchangeable tyre treads, tyre flaps and inner tubes **(headings 40.11 to 40.13)**.

(4) *Tool bags of leather or of composition leather, of vulcanised fibre, etc.* **(*heading 42.02*)**.

(5) Bicycle or balloon nets **(heading 56.08)**.

(6) Towing ropes **(heading 56.09)**.

(7) Textile carpets **(Chapter 57)**.

---

**2.** Rule 3(a) of the General Rules of Interpretation ("GRIs") of the HTSUS provides:

 3. When, by application of rule 2(b) or for any other reason, goods are, *prima facie,* classifiable under two or more headings, classification shall be effected as follows:
 (a) The heading which provides the most specific description shall be preferred to headings providing a more general description. . . .

**3.** For instance, in *E.M. Chemicals v. United States,* 920 F.2d 910, 915–16, 9 Fed.Cir. (T) 33, 40–41 (1990), we stated:

One of our predecessor courts has established the principle that, when two or more tariff categories are equally descriptive of an item, one that describes a use governs over one which describes the composition of the item. *See United States v. Siemens America, Inc.,* 653 F.2d 471, 478, 68 CCPA 62, [70] (CCPA 1981) ("[I]n the absence of legislative intent to the contrary, a product described by both a use provision and an *eo nomine* provision is *generally* more specifically provided for under the use provision").

(8) Unframed safety glass consisting of toughened or laminated glass, whether or not shaped (**heading 70.07**).

(9) Rear-view mirrors (**heading 70.09 or Chapter 90**—see the corresponding Explanatory Notes).

(10) Unframed glass for vehicle headlamps (**heading 70.14**) and, in general, the goods of **Chapter 70**.

(11) Flexible shafts for speed indicators, revolution counters, etc. (**heading 84.83**).

(12) Vehicle seats of **heading 94.01**.

Explanatory Notes, Section XVII, General Note III(C) (emphasis added to item (4)).

According to the Note, parts and accessories that are more specifically described outside of HTSUS Section XVII should be classified under the other, more specific provision. Tool bags are listed as an *example* of an item that is more specifically described by heading 4202 than any of the headings in Section XVII. Heading 8708 is in Section XVII. We agree with the trial court that the "e.g." preceding the listed examples in the Note indicates that containers *similar* to tool bags, such as the Trunk Organizer, are more specifically described by heading 4202 than any of the headings in Section XVII, including heading 8708. We therefore hold that the trial court did not err in determining that HTSUS subheading 4202.92.9020 more specifically describes the merchandise than subheading 8708.99.50.

Totes contends that the relevant Explanatory Note only restates the rule of relative specificity, and that the court erred in relying on the Note to determine which of the competing provisions is more specific. The court, Totes further argues, should have resolved the relative specificity question by applying the principle that "use" provisions generally are more specific than *eo nomine* provisions. *See, e.g., E.M. Chemicals v. United States*, 920 F.2d 910, 9 Fed.Cir. (T) 33 (1990) (holding that imported liquid crystals were more specifically described by a "use" tariff provision than a competing provision describing their chemical composition). We disagree.

It is true that the "Explanatory Notes are only instructive and are not dispositive or binding." *Marubeni Am. Corp. v. United States,* 35 F.3d 530, 535 n. 3 (Fed.Cir.1994). However, while the Explanatory Notes "do not constitute controlling legislative history[, they] nonetheless are intended to clarify the scope of HTSUS subheadings and to offer guidance in interpreting subheadings." *Mita Copystar,* 21 F.3d at 1082. We therefore find no error in the court's use of the Explanatory Notes as an interpretive aid. Moreover, because the merchandise is more specifically described by HTSUS subheading 4202.92.9020 than subheading 8708.99.50, as noted above, there are not two competing tariff provisions that "equally" describe the merchandise. *See E.M. Chems.,* 920 F.2d at 916, 9 Fed.Cir. (T) at 40. Thus, the trial court properly declined to apply the principle that use tariff categories generally more specifically describe merchandise than *eo nomine* provisions. *See id.* at 915–16, 9 Fed. Cir. (T) at 40–41; *see also United States v. Electrolux Corp.,* 46 CCPA 143, 147, 1959 WL 7581 (1959) (principle that use provisions generally govern over *eo nomine* provisions is not a strict rule, but "a convenient rule of thumb for resolving issues where the competing provisions are otherwise in balance").

In sum, we find no error in the trial court's determination that the merchandise shares the essential characteristics of the exemplars named in subheading 4202.92.9020, HTSUS, and thus is classifiable under that subheading. We also find no error in the court's determination that the merchandise is more specifically classifiable under subheading 4202.92.9020 than subheading 8708.99.50.

## CONCLUSION

The Court of International Trade correctly interpreted the HTSUS in determining that the merchandise is properly classified under subheading 4202.92.9020, HTSUS, and is not classifiable under subheading 8708.99.50, HTSUS. We therefore affirm the court's decision dismissing the case.

***AFFIRMED.***