**SPORTS GRAPHICS, INC., Plaintiff,**

**v.**

**UNITED STATES, Defendant.**

**Consol. Court No. 88–08–00656.**

United States Court of
International Trade.

Oct. 20, 1992.

Adduci, Mastriani, Meeks & Schill, Jeffrey A. Meeks, Ralph H. Sheppard, and Lisa Levaggi Borter, Washington, D.C., for plaintiff.

Stuart M. Gerson, Asst. Atty. Gen., Joseph I. Liebman, Attorney-in-Charge, International Trade Field Office, Commercial Litigation Branch, Civ. Div., U.S. Dept. of Justice, Nancy M. Frieden, Washington, D.C., and (Arlene Klolzko, U.S. Customs Service, of counsel), for defendant.

## OPINION AND JUDGMENT

CARMAN, Judge:

Plaintiff, Sports Graphics, Inc., contests the classification and liquidation of its merchandise, vinyl soft-sided coolers, pursuant to section 515 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1515(a) (1988).

This Court has jurisdiction under 28 U.S.C. § 1581(a). After careful examina-

tion of the evidence presented at trial, the arguments of the parties, the tariff schedules, the case law, and other relevant authorities, this Court holds that the United States Customs Service (Customs) improperly classified the subject merchandise as "Luggage ... Of other material ... Other ... Other" under 706.62, Tariff Schedules of the United States (TSUS), at 20% *ad valorem* and finds the correct classification to be item 772.15 or 772.16, TSUS,[1] "Articles chiefly used for preparing, serving, or storing food or beverages, or food or beverage ingredients ... of rubber or plastics.... Other" at 4% *ad valorem* or 3.4% *ad valorem.*

## BACKGROUND

The imported merchandise consists of soft-sided "Chill" coolers in various sizes imported from Taiwan by the plaintiff during the period from 1986 through 1988. The imported merchandise includes the following models: "Big Chill" with dimensions of approximately 12 inches × 18 inches × 7.5 inches and capacity of approximately 19 quarts, "Sport Chill" with dimensions of approximately 10 inches × 12 inches × 6.5 inches and capacity of approximately 11 quarts, "L'il Chill" with dimensions of 9 inches × 7 inches × 6 inches and capacity of approximately 5 quarts, and "Snack Chill" with dimensions of approximately 9 inches × 7 inches × 3.75 inches.

The "Chill" is used during trips away from home, picnics at home or away from home, in the home and on the property of the user, and at spectator and participation events. The "Chill" is portable and can be conveniently carried by the handle and/or adjustable straps. The component material of chief value of the "Chill" is plastic. The various size "Chill" coolers have in common the following characteristics: an outer shell of a vinyl-coated nylon material; an insulating core of approximately ½ inch thick polymer-based closed cell foam; a top secured by a zippered interlocking flap; an inner liner of vinyl; a handle or shoulder strap of nylon webbing and plastic fixtures as a means of carrying the merchandise; and exterior pockets secured by velcro or zippered closures.

All forms of the imported merchandise were classified by Customs under item 706.62, TSUS, "Luggage and handbags, whether or not fitted with bottle, dining, drinking, manicure, sewing, traveling, or similar sets; and flat goods: Of reinforced or laminated plastics: ... Of other material: ... Other" at a rate of 20% *ad valorem.* Plaintiff filed timely protests pursuant to 19 U.S.C. § 1514(a) (1988) contesting Customs' classification. Customs denied the protest pursuant to 19 U.S.C. § 1514(a) and plaintiff subsequently filed a timely summons and complaint leading to the instant action. Prior to the filing of the summonses all liquidated duties were timely paid.

## CONTENTIONS OF THE PARTIES

Plaintiff contends that its merchandise, soft sided "Chill" coolers in various sizes, should be reclassified under TSUS item 772.15 or 772.16 as "[a]rticles chiefly used for preparing, serving, or storing food or beverages, or food or beverage ingredients; and household articles not specially provided for; all the foregoing of rubber or plastics." Plaintiff argues the imported goods are neither luggage nor items that are *ejusdem generis* with those items listed as exemplars under Headnote 2(a)(ii), TSUS. While plaintiff agrees with defendant that the containers are designed to be carried and are used to transport food, beverages and other items, plaintiff contends that the "Chill" coolers are chiefly used to prepare, serve or store food or beverages.

Defendant contends that the "Chill" coolers should be classified under TSUS item 706.62 as luggage. Defendant supports its contention that the coolers should be classified as luggage by arguing that the imported merchandise is designed to contain personal effects during travel, is to be carried with the person, and is like the items enu-

---

**1.** In the 1988 Tariff Schedule of the United States, item 772.15 was changed to 772.16 and the duty rate changed from 4 percent to 3.4 percent *ad valorem.* The language in both items remains the same.

merated in Headnotes 2(a)(i) and 2(a)(ii) of Schedule 7, Part 1, Subpart D, which provide the tariff definitions of luggage. Defendant asserts that the chief use of the merchandise cannot be defined merely as storing or serving food or beverages since the transportation or portability function is neither incidental nor secondary to the merchandise.

The following are the pertinent provisions of the Tariff Schedule:

*Customs' Classification*

Schedule 7, Part 1, Subpart D:

Headnote:

2. For the purposes of the tariff schedules—

  (a) the term *"luggage"* covers—

    (i) travel goods, such as trunks, hand trunks, lockers, valises, satchels, suitcases, wardrobe cases, overnight bags, pullman bags, gladstone bags, traveling bags, knapsacks, kitbags, haversacks, duffel bags, and like articles designed to contain clothing or other personal effects during travel; and

    (ii) brief cases, portfolios, school bags, photographic equipment bags, golf bags, camera cases, binocular cases, gun cases, occupational luggage cases (physicians', sample, etc.), and like containers and cases designed to be carried with the person, except handbags as defined herein ...

Luggage and handbags, whether or not fitted with bottle, dining, drinking, manicure, sewing, traveling, or similar sets; and flat goods:

  Of reinforced or laminated plastics:

  Of other material:

    Other:

706.62  Other ..................... 20% *ad val.*

*Plaintiff's Claimed Classification*

Schedule 7, Part 12, Subpart C:

Articles chiefly used for preparing, serving, or storing food or beverages, or food or beverage ingredients; and household

articles not specially provided for; all the foregoing of rubber or plastics:

772.15 (772.16)  Other ......... 4% (3.4%) *ad val.*

## DISCUSSION

*Presumption of Correctness*

As with all customs classification cases, the government's classification decision is presumed to be correct and the party challenging the decision has the burden of overcoming this statutory presumption. 28 U.S.C. § 2639(a)(1). When determining whether plaintiff has overcome the statutory presumption, the Court "must consider whether the government's classification is correct, both independently and in comparison with the importer's alternative." *Jarvis Clark Co. v. United States,* 2 Fed.Cir. (T) 70, 75, 733 F.2d 873, 878, *reh'g denied,* 2 Fed.Cir. (T) 97, 739 F.2d 628 (Fed.Cir. 1984).

*Ejusdem Generis*

Where statutory construction is at issue, the starting point of any analysis must be the language employed by Congress. Where the statutory language is unclear, rules of statutory construction are useful for interpretation. One such rule is known as *ejusdem generis.* The doctrine of *ejusdem generis* has been described as follows:

> Where there is an enumeration of specific words of description ... followed by a general term ... the rule of *ejusdem generis* aids in statutory interpretation.... Under the rule of *ejusdem generis,* which means "of the same kind," where an enumeration of specific things is followed by a general word or phrase, the general word or phrase is held to refer to things of the same kind as those specified.

*DRI Indus., Inc. v. United States,* 11 CIT 97, 102, 657 F.Supp. 528, 532, *aff'd,* 832 F.2d 155 (Fed.Cir.1987) (quoting *Izod Outerwear v. United States,* 9 CIT 309, 313, 1985 WL 25770 (1985) (citations omitted)).

In order to be classified as luggage under Headnote 2(a) of TSUS Schedule 7, Part 1, Subpart D, TSUS item 706.62, an article must either be specifically enumer-

ated in one of the categories of goods or be like those articles. "As applicable to customs classification cases, *ejusdem generis* requires that the imported merchandise possess the essential characteristics or purposes that unite the articles enumerated *eo nomine* in order to be classified under the general terms." *Nissho–Iwai Am. Corp. v. United States,* 10 CIT 154, 157, 641 F.Supp. 808, 810 (1986). The Court, therefore, looks to the language and enumerated exemplars of Headnote 2(a) and determines whether the soft-sided Chill coolers possess common characteristics or purposes similar to "luggage" as described and listed in the tariff schedules.

Applying the *ejusdem generis* rule of construction, the Customs' Court construed Headnote 2(a)(i) in *Adolco Trading* to encompass "all articles customarily used for travel, which can be closed and usually locked." *Adolco Trading Co. v. United States,* 71 Cust.Ct. 145, 154 (1973). The Court, relying on a narrow view of the term "travel" in Headnote 2(a)(i), held that the plastic shopping bags in issue were not classifiable as luggage. The bags before the *Adolco* Court could not be locked or even closed securely. Based on this lack of closure, the Court found that the "bags were not designed or suitable for carrying clothing or personal effects during travel." *Id.* The Court stated, "[t]he provision does not embrace all containers and cases designed to be carried with the person, but only those *ejusdem generis* with those enumerated." *Id.*

Subsequent to *Adolco,* the Customs Court examined Headnote 2(a)(i) and determined that insulated plastic picnic bags with handles and zippered enclosures fell under the statutory definition of luggage. *Prepac, Inc. v. United States,* 78 Cust.Ct. 108, 433 F.Supp. 339 (1977). *Prepac* appeared to adopt a broader definition of travel than *Adolco,* finding that the bags in issue were "used for the convenience of the user while traveling[, which included] carrying food in an automobile or for picnic purposes." 78 Cust.Ct. at 111, 433 F.Supp. at 341.

In both *Adolco* and *Prepac,* the issue was whether the imported articles were properly classified as luggage under item 706.60 of Schedule 7, Part 1, Subpart D, and if not, whether they were classifiable as claimed by plaintiffs, as articles of plastics, not specially provided for under item 774.60 of Schedule 7, Part 12, Subpart D. *See Adolco Trading Co.,* 71 Cust.Ct. at 149–50; *Prepac, Inc.,* 78 Cust.Ct. at 109, 433 F.Supp. at 339. Three of the four witnesses in *Prepac* testified that the imported merchandise was used to carry food and beverages as well as picnic supplies. 78 Cust.Ct. at 110, 433 F.Supp. at 340. *Prepac,* however, did not discuss whether the picnic bag was chiefly used for preparing, serving, or storing food or beverages since item 772.15, TSUS of Schedule 7, Part 12, Subpart C, was not presented to the Court as a possible classification.

Twelve years after *Prepac* this Court addressed the issue of whether an imported plastic lunch box and beverage flask were properly classified as luggage by Customs or whether the merchandise should properly be classified as plastic or rubber articles chiefly used for preparing, serving, or storing food or beverages, or food or beverage ingredients. *Aladdin Int'l Corp. v. United States,* 13 CIT 1038, 1989 WL 156861 (1989). The *Aladdin* Court concluded that the plastic beverage flask was properly classified under item 772.15, but that the plastic lunch box was properly classified as luggage under 706.62. In reaching its decision, the Court examined *Prepac* and relied on that decision's reasoning. *Id.* at 1044. However, upon further consideration, this Court concludes that the *Aladdin* Court was mistaken as to the law. It would appear that the plastic lunch boxes should have been more properly classified under 772.15 (or 772.16).

*Aladdin* found the lunch box to be *ejusdem generis* with the exemplars in Headnote 2(a)(ii). The Court pointed to the fact that "the lunch or 'sandwich' box is designed to store, organize and protect the lunch (food or beverages) or the sandwich contained within," and that "the lunch box is designed to be carried with the person." *Id.* at 1045 (emphasis added). The Court

went on to say that "[s]ince there is no material disagreement that the lunch box is chiefly used to carry or store food, it was properly classified as luggage under TSUS item 706.62." *Id.* (emphasis added). This language parallels the language of item 772.15 (or 772.16) rather than an *ejusdem generis* analysis of item 706.62.

■ The *Aladdin* Court focused on the portability aspects of the plastic lunch box that was at issue:

Furthermore like the exemplars in headnote 2(a)(ii), the lunch box is designed to be carried with the person.

Aladdin's description of the merchandise, along with the promotional material submitted with the summary judgment motion papers and affidavit in support, clearly indicate that the lunch box is intended to be carried with the person through use of the carrying strap. The promotional literature shows two children carrying lunch boxes, one with the box suspended from a carrying strap draped over the shoulder, the other with the strap grasped in hand.

*Id.* Yet portability is not a characteristic which precludes an item from being classified under item 772.15 (or 772.16). Thus portability should not be viewed as the distinguishing factor between item 772.15 (or 772.16) and item 706.62. Instead, the analysis should focus on whether food and beverages are involved. Schedule 7, Part 1, Subpart D, Headnote 2 does not mention food or beverages. Bottle, dining, and drinking fittings are mentioned, but these fittings provide a method of carrying such items as plates and cups, as opposed to the food and beverages themselves. Schedule 7, Part 12, Subpart C, on the other hand, specifically requires that the article be chiefly used in the preparation, service or storage of food or beverages.

Analyzing *Aladdin* based on whether the preparation, service or storage of food or beverages is involved, leads to the conclusion that item 772.15 (or 772.16) would be the appropriate classification for the plastic lunch boxes. A lunch box is used to store food or beverages until the time of consumption. Frequently one also uses the

lunch box as an article for serving the food. Accordingly, this Court chooses not to follow *Aladdin* in determining whether the imported Chill coolers were properly classified as luggage under item 706.60 of Schedule 7, Part 1, Subpart D, and if not, whether they were classifiable as claimed by plaintiffs, as chiefly used for preparing, serving, or storing food or beverages, or food or beverage ingredients under item 772.15 (or 772.16), TSUS of Schedule 7, Part 12, Subpart C.

The evidence before this Court shows that the imported merchandise is of a class or kind of merchandise with a different purpose than articles in the luggage provision. The imported soft-sided Chill coolers' function is to maintain food and beverage articles in a cold environment over a period of time. An article of rubber or plastic which has storage of food as its chief use is properly classified under 772.15 (or 772.16), TSUS. It is thus necessary to assess whether the soft-sided Chill cooler is chiefly used for preparing, serving, or storing food or beverages or food or beverage ingredients.

*Chief Use*

■ Plaintiff argues that the imported Chill soft-sided coolers are a member of the class or kind known as "coolers" and that the chief use of this product and the whole class known as coolers is to keep food and beverages cold. Chief use means the principal or predominant use, neither exclusive nor fugitive nor possible use, but the usual and common use. *Franklin B. Howland v. United States*, 53 CCPA 62, 64 (1966); *see also United States v. Baltimore & Ohio R.R. Co.*, 47 CCPA 1, 5 (1959). The General Interpretative Rules of the Tariff Schedules (1986) provide the following rules for dealing with chief use tariff provisions such as 772.15 (or 772.16), TSUS:

10. *General Interpretative Rules.* For the purposes of these schedules—
(e) in the absence of special language or context which otherwise requires—
(i) a tariff classification controlled by use (other than actual use) is to be determined in accordance with the use in the United States at, or immediately

prior to, the date of importation, of articles of that class or kind to which the imported articles belong, and the controlling use is the chief use, i.e., the use which exceeds all other uses (if any) combined.

▮ Testimony in plaintiff's case consisted of four witnesses, three of whom are employed by plaintiff Sports Graphics Inc. (SGI), the importer of the merchandise at issue. Because the importers have every incentive to know the particular uses to which their merchandise put, their testimony as to the use should be afforded great probative value. *Baltimore & Ohio R.R. Co.*, 47 CCPA at 5–6 (1959); *see Arbor Foods, Inc. v. United States*, 9 CIT 119, 122, 607 F.Supp. 1474, 1477 (1985) (citing *Klipstein v. United States*, 1 Ct.Cust.App. 122, 124 (1910)).

▮ Mr. Jacober, President of SGI testified that the Chill cooler was developed as an alternative to hard-sided coolers, and that the coolers are designed, manufactured and distributed to consumers specifically for the purpose of keeping food and beverages cold. This design includes the ability to accommodate ice to keep the food and beverage cold and a special overlock lid to obtain optimal thermal retention. He pointed out that none of the Chill coolers are fitted with dining, drinking or other sets of articles, and that the Chill coolers are sold to cooler buyers and not luggage buyers at retail stores.

Mr. Macedo, Chief Engineer and Vice President of Manufacturing at SGI participated in the development of the Chill coolers and considered hard-sided coolers to be the Chill coolers' competition. Based on Mr. Macedo's observations, evaluation and personal use of coolers, he concluded that the principal use of a cooler is to keep food and beverages cold. He observed the Chill coolers being used as a refrigeration source on camping trips, fishing trips, company picnics, and on the back deck of homes.

Mr. Assad, Vice President of Sales at SGI, observed Chill coolers being sold with other coolers in a retail setting, but never sold with knapsacks, suitcases, duffel bags, and briefcases. He pointed out that the main selling point of the Chill cooler is that it keeps food and beverages cold.

Plaintiff's fourth witness, Ms. Davis, is the Merchandise Manager with the Price Club, a wholesale cash-and-carry membership warehouse club. As Merchandise Manager she is responsible for twenty-one Price Club stores on the East Coast. She testified that the principle characteristic in choosing a particular cooler is the cold retention of the product. She gave several examples of where a cooler might be used: on the patio, in the kitchen, on a picnic or at a sporting event. She stated that both the hard-sided and soft-sided coolers have handles or some kind of carrying configuration since consumers would not be interested in storing their food and beverages in a cooler if they were not able to pick up the cooler.

The government agreed with plaintiff that the insulating properties of the imported merchandise are comparable to hard-sided coolers. (Although insulation is not a requirement of either item 706.62 or item 772.15 (or 772.16), it is indicative of an ability to store food and beverages). At trial the government's witness, National Import Specialist Gorman, stated that the major objective of a hard-sided cooler is to keep food and beverages cold. In fact, two Customs' rulings exemplify Customs' policy on classification of similar merchandise. Priv.Ltr.Rul. 065821 (Customs Serv. March 27, 1981); Priv.Ltr. Rul. 077983 (Customs Serv. May 16, 1986). One ruling, regarding classification of plastic passive refrigerated containers, stated that the merchandise in question was:

> similar in function to picnic coolers which hold or store food. In such applications, the transporting of the food is clearly secondary.... The described containers would be classifiable under the tariff provision for other articles of plastic, chiefly used for preparing, serving, or storing food or beverages, or food or beverage ingredients, in item 772.15, TSUS.

Priv.Ltr. Rul. 077983 (Customs Serv. May 16, 1986).

The government has continuously pointed to the fact that the Chill cooler is portable as evidence that the cooler should be classified as luggage. However, the language of item 772.15 (or 772.16) does not exclude articles chiefly used for preparing, serving, or storing food or beverages, or food or beverage ingredients which are easily portable. As discussed above, the focus should be on whether food and beverages are involved, not on whether the particular article is portable.

The evidence consistently demonstrates that the chief use of the Chill cooler, as with the general class of "coolers," is to maintain food and beverages at a desired temperature over a period of time. Such a use is a storage function. The imported soft-sided Chill coolers are thus properly classified under 772.15 (or 772.16), TSUS.

Defendant argues that even if the imported merchandise were within the scope of item 772.15 (or 772.16), TSUS, the government's classification is more specific and therefore must prevail. The rule of relative specificity flows from General Interpretative Rule 10(c) of the Tariff Schedules which provides that "an imported article which is described in two or more provisions of the schedules is classifiable in the provision which most specifically describes it. . . ." It is axiomatic that such rules of construction do not apply where Congress has expressed a contrary intention that the merchandise be classified under a specific provision. As shown above, because the Court determines that the Chill coolers are not susceptible of classification under both the luggage and plastic provisions, the rule of relative specificity does not apply in this case.

## CONCLUSION

This Court holds, after having examined the evidence presented at the trial, the relevant statutes and authorities, and upon all other matters presented, that the plaintiff has overcome the presumption of correctness and that Customs incorrectly classified the merchandise at issue as "luggage" under item 706.62, TSUS. It is also the holding of this Court that the correct classification of the merchandise at issue is as "Articles chiefly used for preparing, serving, or storing food or beverages, or food or beverage ingredients; and household articles not specially provided for; all the foregoing of rubber or plastics: Other" under item 772.15 or 772.16, TSUS (depending upon date of entry), as maintained by plaintiff. Judgment will issue accordingly.

## JUDGMENT

This case having been duly submitted for decision and this Court, after due deliberation, having rendered a decision herein: now, in conformity with said decision, it is hereby

ORDERED, ADJUDGED, AND DECREED that the United States Customs' classification of the subject merchandise under item 706.62, TSUS, is reversed, and it is further

ORDERED, ADJUDGED, AND DECREED that the United States Customs Service shall reliquidate the subject merchandise under item 772.15 or 772.16, TSUS (depending upon date of entry), and shall refund all excess duties with interest as provided by law.