**SGI, INCORPORATED, Plaintiff,**

v.

**UNITED STATES, Defendant.**

**Slip Op. 96–22.**
**Court No. 92–05–00359.**

United States Court of
International Trade.

Jan. 19, 1996.

Meeks & Sheppard, New York City (Ralph H. Sheppard, Lisa Levaggi Borter), for plaintiff.

Frank W. Hunger, Assistant Attorney General of the United States; Joseph I. Liebman, Attorney-in-Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, Department of Justice (Barbara M. Epstein, Amy M. Rubin); Karen P. Binder, Office of Assistant Chief Coun-

sel, International Trade Litigation, United States Customs Service, Washington, DC, for defendant.

**OPINION**

CARMAN, Judge:

Plaintiff, SGI, Incorporated of Cranston, Rhode Island, imports "Chill" coolers from Taiwan, China, and Hong Kong. The imports consist of portable soft-sided vinyl coolers used for storage of food or beverages at a cold temperature over time, which may be carried by handles or straps. The merchandise is identical to the coolers in *Sports Graphics, Inc. v. United States*, 12 Fed.Cir. (T) ——, 24 F.3d 1390 (1994), *aff'g.*, 16 CIT 919, 806 F.Supp. 268 (1992),[1] involving entries during the 1986 through 1988 period and, therefore, classified under the Tariff Schedules of the United States (TSUS).

The relevant provisions of the Harmonized Tariff Schedule of the United States (HTSUS) are as follows:

CHAPTER 42

. . . .

*Additional U.S. Notes*

1. For the purposes of heading 4202, the expression *"travel, sports and similar bags"* means goods, other than those falling in subheading 4202.11 through 4202.39, of a kind designed for carrying clothing and other personal effects during travel, including backpacks and shopping bags of this heading. . . .

. . . .

4202 Trunks, suitcases, vanity cases, attache cases, briefcases, school satchels, spectacle cases, binocular cases, camera cases, musical instrument cases, gun cases, holsters and similar containers; traveling bags, toiletry bags, knapsacks and backpacks, handbags, shopping bags, wallets, purses, map cases, cigarette cases, tobacco pouches, tool bags, sports bags, bottle cases, jewelry boxes, powder cases, cutlery cases and similar

---

1. Unless the Court cites specifically to the U.S. Court of International Trade (CIT or Court) opinion or the United States Court of Appeals for the Federal Circuit (CAFC) opinion, all references to *Sports Graphics* include both opinions.

containers, of leather or of composition leather, of plastic sheeting, of textile materials, of vulcanized fiber or of paperboard, or wholly or mainly covered with such materials:

Articles of a kind normally carried in the pocket or in the handbag:

Other:

4202.92 With outer surface of plastic sheeting or of textile materials:

Travel, sports and similar bags:

With outer surface of textile materials:

| | | |
|---|---|---|
| 4202.92.45 | Other | 20% |

Other:

| | | |
|---|---|---|
| 4202.92.90 | Other | 20% |

BACKGROUND

Upon liquidation of the entries, the merchandise was classified by the United States Customs Service (Customs) under subheading 4202.92.45, HTSUS, and assessed the schedule duty rate of 20% *ad valorem,* except Entry No. 137–1014490–1 covered by Court No. 91–06–00413.[2]

Defendant claims that if the classification invoked by Customs in liquidation is determined by the Court to be incorrect, then defendant urges alternatively that the imports are classifiable as "similar containers," *i.e.,* similar to the exemplars named in Heading 4202, and dutiable at the same rate, 20% *ad valorem,* under subheading 4202.92.90, HTSUS.

Plaintiff challenges Customs' classification and opposes defendant's proposed alternative classification, both under Heading 4202, and claims various alternative classifications under Chapter 39, HTSUS: Heading 3923, covering "Articles for the conveyance or packing of goods, of plastics . . .," dutiable at the rate of 3% *ad valorem;* Heading 3924 covering "Tableware, kitchenware, other household articles and toilet articles, of plastics," dutiable at the rate of 3.4% *ad valorem;* and Heading 3926, the residual provision for articles of

plastics, dutiable at the rate of 5.3% *ad valorem.*

As a classification dispute, the Court has jurisdiction pursuant to 28 U.S.C. § 1581(a) (1988) and this action is before the Court for *de novo* review under 28 U.S.C. § 2640(a)(1) (1988). Currently before the Court are cross-motions for summary judgment pursuant to U.S. CIT R. 56. The cross-movants agree, and the Court finds, there are no genuine disputed material issues of fact for trial and the action may be decided on motion for summary judgment under Rule 56.

For the reasons set forth below, plaintiff's motion for summary judgment is denied; defendant's cross-motion for summary judgment sustaining Customs' classification and dismissing the action is denied; summary judgment sustaining defendant's proposed alternative classification is granted.

THE RECORD

As evidentiary support of its motion, plaintiff submits an affidavit of Jeffrey Jacober, President of SGI, Incorporated, successor to Sports Graphics, Incorporated, plaintiff in *Sports Graphics, supra.* (*See* Affidavit of Jeffrey Jacober (Jacober Aff.) ¶ 1.) Defendant has submitted the declaration of Dan Chojnacki, President of Domestic Bag Company, Incorporated in Akron, Ohio. (*See* Decl. of Dan Chojnacki, *reprinted in* Def.'s Resp. to Pl.'s Opp'n to Def.'s Cross–Mot. for Summ.J. Ex. C.) Additionally, both parties have submitted various documentary exhibits, some appended to the foregoing affidavit and declaration,[3] and various Customs rulings under the TSUS to which reference is made by the parties in their briefs.

The recently decided case of *Totes, Inc. v. United States,* 18 CIT ——, 865 F.Supp. 867 (1994), *aff'd,* 14 Fed.Cir. (T) ——, 69 F.3d 495 (1995), also discussed *infra,* articulates the common characteristics and purposes of the exemplar containers under Heading 4202, which holding, of course, is binding on this Court.

---

**2.** *See infra* note 11.

**3.** Promotional material used to market the "Chill" coolers, appended to the Jacober Affida-

vit as Exhibit D, is illustrative of the subject merchandise and is included in this opinion as Appendix A.

■ Certain marketing or advertising literature depicting coolers and various other bags, claimed by defendant to be distributed by bag manufacturers, is appended to defendant's memoranda of law and is relied on by defendant in its response to *factually* establish that plaintiff's "Chill" coolers are of the same class or kind of merchandise as that marketed by the identified bag manufacturers, and the exemplar containers named in Heading 4202. These appended marketing materials are properly objected to by plaintiff as being without evidence of authenticity, by affidavit or otherwise, and will not be considered by the Court as evidence on these cross-motions.[4]

Plaintiff's objection to the Chojnacki Declaration and Exhibit 1 attached thereto, which is the declarant's own marketing literature, is totally without merit. Plaintiff's objection to the declaration is grounded, improperly, on the fact that it was not submitted in the form of an affidavit or "sworn statement." Declarations may be used in lieu of affidavits. 28 U.S.C. § 1746 (1988) (authorizing use of unsworn declarations under penalty of perjury in lieu of *inter alia,* affidavits). Because the declarant's statements authenticate his own marketing literature, plaintiff's authentication objection is also without merit.

Upon consideration of the parties' Statements of Material Facts Not in Issue in accordance with U.S. CIT R. 56(i), the Jacober Affidavit, the Chojnacki Declaration, the facts set forth in *Sports Graphics* as to the design, construction, and purpose of merchandise identical to that at issue here, and the courts' opinions in *Totes,* which articulate the common characteristics and purposes of the Heading 4202 exemplar containers, the Court finds that there is no genuine dispute as to any material facts.

## THE FACTS

The subject coolers, marketed by plaintiff under the trade name "Chill," with other designations for specific models of different sizes, are portable soft-sided vinyl food coolers that serve to store food and beverages maintaining a cold temperature over time (as implied by the name "Chill").[5] The imports have an insulative polyethylene closed cell foam approximately ½ inch thick between a vinyl outer shell and vinyl inner liner surrounding the storage space of the cooler. The insulative properties of the coolers is comparable to that of other commercially marketed food coolers, including both hard and soft-sided coolers. The top of the rectangular cooler is secured by a patented zippered interlocking flap. Carrying and portability of the coolers is facilitated by a handle or shoulder strap. There is no dispute that plastic is the component material of chief value. The coolers may be used in a number of locations where food or beverages might be consumed, such as in and around the home and during trips away from home on picnics, sporting, and at spectator and participation sporting events.

## DISCUSSION

### I.

In support of its claim that the coolers are not *ejusdem generis* with the Heading 4202 exemplar containers, plaintiff heavily relies on the holding in *Sports Graphics* that the identical coolers were not *ejusdem generis* with the TSUS luggage exemplars. (*See generally,* Pl.'s Mem. in Support of Mot. for Summ.J. (Pl.'s Br.) at 11–16.)

In *Sports Graphics,* Customs had classified plaintiff's coolers as "Other" articles of "luggage" under item 706.62, TSUS, pursuant to the definitional Headnotes 2(a)(i) and

4. Nonetheless, the Court points out that the characteristics common to the Heading 4202 exemplar containers for purposes of an *ejusdem generis* analysis of the scope of "similar containers" have been established by *Totes,* which as stated above is binding on this Court.

5. The parties seem to quibble over whether, in addition to storage of food or beverages and maintaining their cold temperature over time, the coolers serve to "preserve" food or beverages. It is, of course, common knowledge that storage in cold temperatures, in addition to enhancing the taste of certain food and beverages, preserves them. Therefore, reference in this opinion to the purpose of the coolers to "store" food or beverages maintaining a cold temperature over time shall be deemed to include "preservation" of the food or beverage items.

(ii) of Schedule 7, Part 1, Subpart D.[6] *See Sports Graphics,* 16 CIT at 919, 920–21, 806 F.Supp. at 269–70. Plaintiff claimed, and the CIT agreed, that the merchandise was not *ejusdem generis* with the TSUS luggage exemplars because "the chief use of the Chill cooler, as with the general class of 'coolers,' is to maintain food and beverages at a desired temperature over a period of time. Such a use is a storage function." *Id.* at 926, 806 F.Supp. at 274. Accordingly, the coolers were properly dutiable under item 772.15, TSUS,[7] as "[a]rticles chiefly used for preparing, serving, or storing food or beverages.... Other." On appeal, the CAFC affirmed, holding with respect to *ejusdem generis:*

> The trial court concluded that when determining the classification of the merchandise at issue here, under a proper analysis, the focus should be on whether food or beverage is involved. We agree. In focussing on whether food or beverage is involved, it is clear that the merchandise has a different purpose, the storage of food or beverage, which precludes the merchandise from being *ejusdem generis with the exemplars listed in headnotes 2(a)(i) and 2(a)(ii) of the luggage provision.*

*Sports Graphics,* 12 Fed.Cir. (T) at ——, 24 F.3d at 1393 (emphasis added).

Plaintiff insists here that this Court's *ejusdem generis* analysis of Heading 4202 is controlled by the *Sports Graphics* analysis of the TSUS luggage provisions, which analysis excluded the identical coolers from the TSUS luggage provisions because the focus was on the coolers' purpose for storage of food or beverage. Defendant urges, for the reasons discussed below, that the Court should decline to follow the *Sports Graphics* analysis of the TSUS luggage provisions and address the classification of food coolers under Heading 4202, HTSUS, as an issue of first impression.

■ Arguably, of course, if in the classification of coolers under the TSUS luggage provisions an *ejusdem generis* analysis must focus on the purpose of the coolers for the storage of food or beverage, then the same analysis should apply to Heading 4202, unless the HTSUS Heading is materially different from the TSUS luggage provisions and a different result is warranted. The Court holds, essentially for the following reasons urged by defendant, that *Sports Graphics* does not apply to Heading 4202.

■ First, while defendant recognizes a significant overlap in coverage between Heading 4202 and the TSUS luggage provisions, defendant correctly stresses that Heading 4202 does not purport to be simply a "luggage" definition or provision. Indeed, Heading 4202 makes no reference whatever to the term "luggage." Accordingly, the Court rejects plaintiff's position that Heading 4202, HTSUS, is merely a reenactment of the TSUS luggage definition.

---

**6.** The pertinent TSUS provisions read:

*Subpart D Headnotes:*

    2. For the purposes of the tariff schedules—
        (a) the term *"luggage"* covers—
            (i) travel goods, such as trunks, hand trunks, lockers, valises, satchels, suitcases, wardrobe cases, overnight bags, pullman bags, gladstone bags, traveling bags, knapsacks, kitbags, haversacks, duffel bags, and like articles designed to contain clothing or other personal effects during travel; and
            (ii) brief cases, portfolios, school bags, photographic equipment bags, golf bags, camera cases, binocular cases, guncases, occupational luggage cases (physicians', sample, etc.), and like containers and cases designed to be carried with the person, except handbags as defined herein;

    . . . .

Luggage and handbags ...

    Of other material:

      Other:

706.62      Other ................20% ad val.

**7.** In the 1988 TSUS, item 772.15 was changed to 772.16 and the duty rate changed from 4% to 3.4% *ad valorem.* The language in both items remained the same. References herein to item 772.15 shall be deemed to also refer to item 772.16. *See Sports Graphics,* 16 CIT at 919 n. 1, 806 F.Supp. at 269 n. 1.

Second, as the rule of *ejusdem generis* requires, the *Sports Graphics* holding was based on the common characteristics running through the specific *statutory* exemplars of the TSUS luggage provisions. The Court agrees with defendant that Heading 4202 is expressly broader than the language of the TSUS luggage provisions. For example, defendant correctly points out that unlike Heading 4202, the TSUS headnotes to Schedule 7, Subpart D exclude such articles as "cases for musical instruments," "cases suitable for pipes or for cigar or cigarette holders," and "cases, purses, or boxes provided for in part 6A of this schedule." Moreover, defendant buttresses its contention that Heading 4202 is far broader in scope of coverage than the TSUS luggage provisions because the Heading includes an expanded and diversified list of exemplar containers, such as shopping bags, holsters, musical instruments cases, map cases, toiletry bags, sports bags, tool bags, jewelry boxes, etc.

Third, defendant stresses that unlike *Prepac, Inc. v. United States*, 78 Cust.Ct. 108, 433 F.Supp. 339 (1977) (holding that insulated picnic bags were classifiable as luggage under the TSUS), in *Sports Graphics*, plaintiff proposed an alternative classification under item 772.15, TSUS, specifically covering articles used for the storage of food. There is no provision under the HTSUS containing the relevant language of item 772.15, TSUS, "[a]rticles chiefly used for preparing, serving, or storing food or beverages." In *Sports Graphics*, the CAFC observed the CIT had distinguished *Prepac* "on the basis that classification under item 772.15, TSUS, was not addressed in that case as it was not presented to the court as an alternative classification." *Sports Graphics*, 12 Fed.Cir. (T) at ——, 24 F.3d at 1392. Analogous to the importer's claims in *Prepac*, none of the classifications under Chapter 39 claimed by plaintiff here expressly specifies food or beverage use. In tariff classification, statutory interpretation under the rule of *ejusdem generis* must be based on " 'the essential characteristics or purposes that unite the articles enumerated *eo nomine.*' " *Totes*, 14 Fed.Cir. (T) at ——, 69 F.3d 495 at 498 (quoting *Sports Graphics*, 12 Fed.Cir. (T) at ——, 24 F.3d at 1392), discussed *infra*. As noted above, Heading 4202 is broad in scope. Plainly, absent a competing provision in the HTSUS similar to item 772.15, TSUS, the Court could not justifiably rationalize an interpretation of Heading 4202 that excluded a container because it was used for the storage of food or beverage.

Plaintiff insists that in *Sports Graphics*, the CIT and subsequently the CAFC in excluding the coolers from the TSUS luggage provisions would still have focused on the purpose of the coolers for storage of food or beverage *even if a competing provision like 772.15 were nonexistent*, and classified the merchandise "based on material composition or some other criteria." (Pl.'s Reply to Def.'s Opp'n Br. and Opp'n to Def's Cross–Mot. for Summ.J. at 7.) The foregoing contention is plainly incorrect given what occurred in *Prepac* where item 772.15 was not claimed by the importer and the insulated picnic bags were held to be classifiable as luggage. As previously observed, *Prepac* was not followed by the CIT in *Sports Graphics* expressly because there was no claim by plaintiff in *Prepac* under item 772.15, TSUS. *See Sports Graphics*, 16 CIT at 923, 806 F.Supp. at 271.

Fourth, in urging the Court to distinguish *Sports Graphics* in construing Heading 4202, defendant relies on the rationale of the CAFC's recent decision in *Totes*, *supra*, which specifically addresses the scope of Heading 4202 under the rule of *ejusdem generis*. The *Totes* analysis of Heading 4202 fully supports the broad interpretation urged by defendant.

In *Totes*, a motor vehicle "Trunk Organizer," a rectangular case used to organize and store items such as motor oil, tools, and jumper cables in an automobile trunk and held in place in the trunk by Velcro strips affixed to the bottom of the case, was held to be *ejusdem generis* with the container exemplars named in Heading 4202, HTSUS. *See Totes*, 18 CIT at ——, 865 F.Supp. at 869–70, 872. The CAFC in *Totes* rejected appellant-plaintiff's position that following the rationale of *Sports Graphics*, the Trunk Organizers, used to organize and store items in an automobile trunk, served a "different purpose"

than the Heading 4202 exemplar containers. *See Totes*, 14 Fed.Cir. (T) at ——, 69 F.3d at 498.

The CAFC found no error in Judge Newman's reasoning in *Totes*, that "'Totes' product shares with the containers listed *eo nomine* in subheading 4202.92.9020 the essential characteristics of organizing, storing, protecting, and carrying various items," and that the residual provision for "similar containers" in Heading 4202 has "broad reach." *See id.* at ——, 69 F.3d at 498 (citing *Totes*, 18 CIT at ——, 865 F.Supp. at 872). In *Totes*, Judge Newman held

> [a]s to the broad reach of the residual provision for "similar containers" in Heading 4202 by virtue of *ejusdem generis*, this writer finds it significant that the individual exemplars are disparate in their physical characteristics, *purposes and uses* ranging from such small containers as spectacle and cigarette cases, wallets, and tobacco pouches to such large containers as trunks and suitcases.

*Totes*, 18 CIT at ——, 865 F.Supp. at 872 (emphasis added).

As further stressed by the CIT in *Totes*, and affirmed by the CAFC, the criteria for being *ejusdem generis* with the named articles for classification purposes under Heading 4202, based on the essential characteristics or purposes that unite the exemplar articles, is whether the subject merchandise is designed to "organize, store, protect and carry various items." *Id.* at ——, 865 F.Supp. at 871–72; *Totes*, 14 Fed.Cir. (T) at ——, 69 F.3d at 498. The "Chill" coolers are plainly designed for the foregoing purposes. There is nothing in Heading 4202 that excludes containers specially insulated and designed for storing food or beverages in a cold condition over a period of time. Indeed, the expanded panoply of enumerated containers described in Heading 4202, designed to protect, store, and carry wide-ranging products, and some serving the purpose of storing certain consumable products, including pouches and cases for cigarettes and tobacco, leaves little doubt that storage of food in coolers is not a "different purpose" than that served by the Heading 4202 exemplars.

Thus, for application of *ejusdem generis* to Heading 4202, it is the exemplar containers' *purpose or use* for storage, transportation, protection, etc. that is relevant, and *not whether the contents stored and/or carried by the exemplar containers* are food or beverages. Although most of the Heading 4202 exemplar containers are not specifically designed and constructed for storage of food or beverage to maintain a cold temperature over time, precise functional equivalence to, or commercial interchangeability with, particular exemplars enumerated in the Heading is plainly not required by the term "similar" or the rule of *ejusdem generis*. *See Totes*, 18 CIT at ——, 865 F.Supp. at 874.

Plaintiff's contention that the insulation feature of the "Chill" coolers makes them "more than" the containers covered by Heading 4202 is unpersuasive. Certainly, protective cushioning or insulation material to protect the contents from impact damage when stored or carried by common containers such as spectacle cases, camera cases, binocular cases, musical instrument cases, jewelry boxes, bottle cases, etc. would not exclude such containers from classification under Heading 4202 because they are "more than" the named containers. Therefore, the insulative feature of the "Chill" coolers for temperature maintenance of the contents has no relevance in determining whether the merchandise is classifiable under Heading 4202.

## II.

■ To support its argument that the coolers are excluded from Heading 4202, plaintiff cites the *Continuity of Import and Export Trade Statistics After Implementation of the Harmonized Commodity Description and Coding System*, USITC Pub. 2051 (Jan. 1988) (*ITC Report*); *ITC Report*, Annex I (*Conversion Tables*); H.R.Rep. No. 576, 100th Cong., 2d Sess. 549–550 (1988), *reprinted in* 1988 U.S.C.C.A.N. 1547, 1582–83 (*Conference Report*); and the Congressional goal of tariff neutrality. (*See* Pl.'s Br. at 19–24.) Citing *Semperit Indus. Prods., Inc. v. United States*, 18 CIT ——, 855 F.Supp. 1292 (1994), *Beloit Corp. v. United States*, 18 CIT ——, 843 F.Supp. 1489 (1994), and *Hemscheidt Corp. v. United States*, 18

CIT ——, 858 F.Supp. 223 (1994), *aff'd.*, 72 F.3d 868 (Fed.Cir.1995), plaintiff maintains that the neutrality goal of Congress in the TSUS/HTSUS conversion is achieved only by following *Sports Graphics* under Heading 4202 and classifying the merchandise under one of plaintiff's claimed classifications under Chapter 39. The Court disagrees.

The TSUS/HTSUS conversion was effective as of January 1, 1989, while the CIT's *Sports Graphics* decision, issued October 20, 1992, and the CAFC affirmance both occurred well after the conversion date. Accordingly, *Sports Graphics* was not a "prior decision" that the Court might infer was approved and ratified by Congress in the TSUS/HTSUS conversion and should not be considered instructive in interpreting the HTSUS. As stated in the *Conference Report:*

> [D]ecisions by the Customs Service and the courts interpreting nomenclature under the TSUS are not to be deemed dispositive in interpreting the HTS. Nevertheless, on a case-by-case basis *prior* decisions should be considered instructive in interpreting the HTS, *particularly where the nomenclature previously interpreted in those decisions remains unchanged* and no dissimilar interpretation is required by the text of the HTS.

H.R.Rep. No. 576 at 549–50, *reprinted in* 1988 U.S.C.C.A.N. at 1582–83 (emphasis added).

With respect to prior decisions, at the time of the conversion only *Prepac* would have had any relevance because it held that somewhat analogous merchandise was properly dutiable under the TSUS as luggage. Of course, as previously discussed above, item 772.15, TSUS, was not addressed in *Prepac.*

Moreover, as suggested in the *Conference Report,* "prior decisions" may be considered instructive only to the extent that "the nomenclature previously interpreted in those decisions remains *unchanged* and no dissimilar interpretation is required by the text of the HTS." As emphasized above, the HTSUS nomenclature greatly expands upon and diversifies the types of containers enumerated in the TSUS luggage provision and encompasses numerous goods not commonly thought of as "luggage," *e.g.,* holsters, musical instrument cases, shopping bags, map cases, tobacco pouches, and jewelry boxes. And, if for no other reason, a dissimilar interpretation under the HTSUS from that in *Sports Graphics* is required here due to the absence in the HTSUS of the pertinent language of item 772.15, TSUS, which was focused on in *Sports Graphics* as the proper classification of the coolers.

■ In any event, with regard to plaintiff's reliance on the *Conversion Tables,* as pointed out in *Beloit,* 18 CIT at ——, 843 F.Supp. at 1499, and *Hemscheidt,* 18 CIT at ——, 858 F.Supp. at 227, the *ITC Report* cited by plaintiff, which cross-references items under the TSUS with subheadings under the HTSUS, although a relevant guide to the Court's inquiry, is not entitled to great weight; "the conversion cross-reference must in all cases be approached cautiously as a guide to the scope of HTSUS provisions," and "are not intended, nor should they be viewed as a substitute for, the traditional tariff classification process." *Marubeni Am. Corp. v. United States,* 19 CIT ——, 905 F.Supp. 1101, 1110–1111 (1995) (citing *ITC Report*) (internal quotations and emphasis omitted); *see also TSUSA/HTSUS Cross Reference Clarification,* 53 Fed.Reg. 27,447 (Customs Serv.1988) (notice) (*Clarification Notice*).

Among other strong caveats or cautionary remarks concerning improper reliance by the international trade community on the conversion cross-references for classification of merchandise under the HTSUS in lieu of the traditional tariff classification process, the *Clarification Notice* underscores that the TSUS/HTSUS cross-references were "designed to assist the user in translating a *known* classification in the TSUSA into a likely classification under the HTSUS." *See Clarification Notice,* 53 Fed.Reg. at 27,447 (emphasis added). The item 772.15, TSUS, classification evolving from *Sports Graphics,* obviously was not a *known* classification on the effective date of the TSUS/HTSUS conversion. Consequently, plaintiff's efforts to establish item 772.15, TSUS, as a "known classification in the TSUSA" for plaintiff's coolers either at the time of the *ITC Report*

or as of the effective date of TSUS/HTSUS conversion are unavailing.

As for tariff neutrality in the conversion, plaintiff's coolers in *Sports Graphics,* imported during the 1986 through 1988 period prior to the conversion, were assessed with duty by Customs at the rate of 20% *ad valorem* under item 706.62, TSUS, the luggage provision. Therefore, to the extent that classification of plaintiff's coolers in this case under the HTSUS was intended to be tariff neutral, the assessment of 20% *ad valorem* under Heading 4202, HTSUS, is precisely in harmony with the 20% duty rate assessed by Customs shortly before the TSUS/HTSUS conversion on the 1986 through 1988 entries of identical merchandise in *Sports Graphics.*

### III.

Plaintiff's reliance on Customs' pre-conversion exclusion of coolers from the TSUS luggage provisions under the *Guidelines for Determining the Scope of the Luggage Provisions of the Tariff Schedules (Guidelines )* [8] published in 1984 to supplement the TSUS luggage definitions in Schedule 7, Part 1, Subpart D, Headnote 2, and the various rulings issued under the TSUS, is unfounded for the same reasons set forth by defendant and addressed by the Court in connection with rejection of *Sports Graphics* as controlling under the HTSUS, which discussion need not be repeated.[9] Accordingly, the Court agrees with defendant for the same reasons that the judicial construction of the TSUS luggage provision under *Sports Graphics* does not apply to Heading 4202, the *Guidelines* and rulings under the TSUS are inapplicable to the scope of Heading 4202.

### IV.

■ Having accepted the arguments advanced by defendant for inclusion of the merchandise in Heading 4202, the Court now turns to Customs' classification of the coolers, specifically under subheading 4202.92.45, HTSUS. "Travel, sports and similar bags" are defined under the HTSUS:

> For the purposes of heading 4202, the expression *"travel, sports and similar bags "* means goods, other than those falling in subheading 4202.11 through 4202.39, *of a kind designed for carrying* clothing and other *personal effects* during travel, including *backpacks and shopping bags* of this heading . . .

Additional U.S. Note 1 to Chapter 42 (additional emphasis added).

First, defendant points to the "backpacks and shopping bags" exemplars in Additional U.S. Note 1 and argues that like such exemplars the coolers are utilized to organize, store, protect, and carry various items, which may include food and beverages. (*See* Br. in Opp'n to Pl.'s Mot. for Summ.J. & in Support of Def.'s Cross–Mot. for Summ.J. (Def.'s Br.) at 12–17.) To support its contention, defendant relies on the Jacober Affidavit, which makes reference to a patented feature of the coolers—a zippered interlocking flap used to secure the top and to maximize the surface area of polyethylene closed cell foam covering the top of the cooler. The patent in question, No. 4,940,173, covers an "improved" backpack having a removable insulated container incorporating the same zippered flap design feature utilized by the "Chill" coolers. The removable insulated container itself, but not the complete backpack, appears similar to the imported coolers.

From the description of the "improved" backpack covered by the patent, it is clear that the insulated container *per se* is not the backpack or similar to the backpack. The insulated container component simply fits

---

**8.** Customs H.Q.Mem. CLA–2 CO:R:CV:G 073827 c, *reprinted in* Pl.'s Br. Ex. 6.

**9.** Plaintiff's claim that until 1990, Customs consistently classified coolers outside the luggage provisions simply fails as shown by *Sports Graphics* involving the plaintiff's own merchandise, imported during the period of 1986 through 1988, which was classified by Customs under the TSUS luggage provision, item 706.62. *See Sports*

*Graphics,* 16 CIT at 920–21, 806 F.Supp. at 269–70. Presumably, in 1989 when the HTSUS became effective, Congress had been aware that the subject coolers were being classified by Customs under the luggage provisions of the TSUS, and the *Sports Graphics* case overruling that classification and holding that the coolers were described in item 772.15, TSUS, had not yet been decided by the CIT.

within a fabric sleeve incorporated within the backpack body. Thus, plaintiff's patent, labeled "BACKPACK *AND* INSULATED CONTAINER" (emphasis added), explains: "A backpack is provided which has at least one sleeve secured to a panel of the backpack, which sleeve is sized and structured to closely *receive and hold an insulated container that is readily removable from this sleeve, when desired.*" (*See* U.S. Patent 4,940,173, *reprinted in part in* Jacober Aff. Ex. A (emphasis added).) Continuing, the patent explains "[a]nother object of this invention is to provide an improved *combination of a backpack and a removable insulated container.* Another object of the present invention is to provide an improved *combination backpack and insulated container* that is suitable for storing and transporting items that are cooler or warmer than ambient temperature." (*Id.* (emphasis added).)

Defendant also contends the coolers fall within the definition of "travel, sports and similar bags" pursuant to Additional U.S. Note 1 because they are "similar bags ... of a kind designed for carrying clothing and other personal effects during travel." (*See* Def.'s Br. at 17–18.) According to defendant, food and beverages are included in "personal effects" as that term is defined in *Black's Law Dictionary, i.e.,* chattels, movable or personal property of any kind, as opposed to land. Defendant, however, overlooks that even granting that food and beverages in small quantities for personal consumption are "personal effects,"[10] as contemplated by Additional U.S. Note 1, Chapter 42, the Note includes the further criterion, "of a kind *designed for carrying.*"

Obviously, food cooler bags having carrying handles or straps are "designed for carrying," but unlike shopping bags and backpacks, which are used simply to organize and *carry* their contents, "the essential purpose of the [Sports Graphics] coolers [is] to store food or beverages in a cold environment for a period of time," *Totes,* 14 Fed.Cir. (T) at ——, 69 F.3d at 498, and such storage purpose is the coolers' "critical purpose and the critical reason why a consumer would purchase the imported merchandise," (Jacober Aff. ¶ 34). Therefore, the specially insulated "Chill" coolers are not encompassed by Additional U.S. Note 1 because the coolers are not "designed for carrying clothing and other personal effects during travel."

## V.

Because the coolers are not "designed for carrying clothing and other personal effects during travel," like backpacks and shopping bags, it does not follow *ipso facto* that the coolers do not possess the essential common characteristics that unite all of the exemplar containers in Heading 4202. As the Court has found that the coolers are *ejusdem generis* with the exemplar containers in Heading 4202, they are classifiable as "similar containers" within the purview of subheading 4202.92.90, HTSUS, a less specific subheading than subheading 4202.92.45.

As stressed by Judge Newman in *Totes:*

> Totes' additional contention that the trunk organizers are not "similar containers" within the purview of Heading 4202 because they are not tool bags *per se* (which defendant concedes) is of no avail in defeating classification pursuant to Heading 4202. The question is [not whether the import is a tool bag or similar only to a tool bag, but] ... whether or not the item at issue does have characteristics in common with [all] the enumerated articles [in Heading 4202]. Precise functional equivalence to, or commercial interchangeability with, any one particular exemplar enumerated in the Heading plainly is not required by the rule of *ejusdem generis.*

*Totes,* 18 CIT at ——, 865 F.Supp. at 874 (internal quotations and citations omitted) (brackets added in *Totes* ).

Thus, to be classifiable as "similar containers" under Heading 4202 by operation of *ejusdem generis,* the imports need not be backpacks, shopping bags, any other exemplar container in the Heading, or similar to

---

10. The Court notes that in *Prepac,* the Customs Court declared that "food or beverage is not ordinarily considered personal effects." *See Pre-* pac, 78 Cust.Ct. at 111, 433 F.Supp. at 341. In view of the conclusions reached herein, the Court need not definitively decide that issue.

any particular named exemplar in functional equivalence or commercial interchangeability, any more so than there is functional equivalence or interchangeability between or among any of the other exemplar containers.

Defendant maintains that in the event Customs' classification under subheading 4202.92.45 is found to be incorrect, the Court should alternatively hold the imports are encompassed by the residual provision for "similar containers" in Heading 4202 and classifiable under the subheading "Other" in 4202.92.90. (*See* Def.'s Br. at 19–20.) The latter residual subheading also specifies a duty rate of 20% *ad valorem.*

In sum, the coolers are *ejusdem generis* with the Heading 4202 exemplars because they share the essential characteristics of organizing, storing, protecting, and carrying various items. *See also Totes,* 14 Fed.Cir. (T) at ——, 69 F.3d at 498. Accordingly, the Court concludes that the coolers are classifiable under subheading 4202.92.90, HTSUS, as alternatively claimed by defendant.

## VI.

Sustaining defendant's proposed alternative classification under Heading 4202, specifically under subheading 4202.92.90, obviates addressing plaintiff's claimed provisions under Chapter 39 and the numerous legal and factual obstacles raised by defendant to those classifications. Succinctly put, merchandise classifiable under Heading 4202 is precluded from classification under Chapter 39, HTSUS, pursuant to Chapter Note 2(h), which expressly does not include containers classifiable under Heading 4202. Consequently, relative specificity is not presented in this case.

### CONCLUSION

Both Customs' classification under subheading 4202.92.45, HTSUS, and plaintiff's claimed classifications under Chapter 39 are found inapplicable. Defendant's proposed alternative classification under subheading 4202.92.90 is found to encompass the mer-

chandise and is determined on the record before the Court to be the legally appropriate classification. Such classification specifies the same duty rate as that assessed in liquidation, 20% *ad valorem,* and therefore reliquidation of the entries is not required for assessment of the correct duty rate and amount of duty, excepting Entry No. 137–1014490–1 covered by Court No. 91–06–00413.[11]

■ It is observed that defendant raised its proposed alternative classification without formal counterclaim, assertedly because the rate of duty under such alternative classification is the same as that assessed in liquidation. Whether or not defendant interposes a counterclaim in furtherance of its alternatively proposed classification in this case, it is still incumbent upon the Court to affirmatively reach the correct classification and enter judgment accordingly. *See Jarvis Clark Co. v. United States,* 2 Fed.Cir. (T) 70, 75, 733 F.2d 873, 878 (1984).

Accordingly, plaintiff's motion for summary judgment is denied; defendant's cross-motion for summary judgment sustaining Customs' classification and dismissing the action is denied; however, summary judgment for defendant is granted sustaining its proposed alternative classification under subheading 4202.92.90, HTSUS, and the rate of duty assessed in liquidation at 20% *ad valorem.* Judgment is entered accordingly directing reliquidation of only Entry No. 137–1014490–1, covered by Court No. 91–06–00413.

Counsel for both parties have, to their credit, submitted thorough, clear, and exhaustive memoranda of law covering the issues presented, which have been carefully reviewed and researched by the Court. The CIT's decision in *Sports Graphics* was authored by the writer who, therefore, has that advantage in explicating this Court's rationale, as affirmed by the CAFC. The Court does not believe that counsels' oral elucidation of the parties' positions or contentions

11. Based on the parties' statements of material facts not in issue and responses thereto, there is no dispute that the merchandise in Entry No. 137–1014490–1 covered by Court No. 91–06– 00413 was not assessed duty by Customs under 4202.92.45, HTSUS, at the rate of 20% *ad valorem.* Accordingly, the Court directs reliquidation of that entry consistent with this opinion.

would be productive or further advance the interests of the parties. Accordingly, in view of the foregoing, and in the interest of judicial economy, and importantly, a speedy disposition of this long-pending action, the Court is exercising its discretion to deny plaintiff's motion for oral argument.

## JUDGMENT

This case having been duly submitted for decision and this Court, after due deliberation, having rendered a decision herein; now, in conformity with said decision it is hereby

**ORDERED** plaintiff's motion for oral argument in this action is denied; and it is further

**ORDERED** plaintiff's motion for summary judgment is denied; and it is further

**ORDERED** defendant's cross-motion for summary judgment sustaining Customs' classification and dismissing the action is denied; and it is further

**ORDERED** defendant's cross-motion for summary judgment proposing an alternative classification under subheading 4202.92.90, HTSUS, and the rate of duty assessed in liquidation at 20% *ad valorem*, is granted; and it is further

**ORDERED** Customs is directed to reliquidate Entry No. 137–1014490–1, covered by Court No. 91–06–00413, in accordance with this opinion; and it is further

**ORDERED** plaintiff's action is dismissed.

834

DRINK CHILL®