(C.D. 3132)

LOS ANGELES TILE JOBBERS, INC. *v.* UNITED STATES

United States Customs Court, First Division

(Decided September 28, 1967)

*Glad & Tuttle* (*Robert Glenn White* of counsel) for the plaintiff.
*Carl Eardley,* 'Acting Assistant Attorney General (*Sheila N. Ziff,* trial attorney), for the defendant.

Before WATSON and BECKWORTH, Judges, and OLIVER, Senior Judge

OLIVER, Judge: The merchandise the subject of the instant protest consists of small, spheroidal-shaped colored pieces of glass, having flattened surfaces on the back portion and imported either loose or mounted on a mesh backing. Duty was assessed at 30 per centum ad valorem under paragraph 218 (f) of the Tariff Act of 1930, as modified by the Protocol of Terms of Accession by Japan to the General Agreement on Tariffs and Trade, T.D. 53865 and T.D. 53877, as other colored glass articles. Plaintiff contends for classification under the same paragraph of the act, as modified by T.D. 55615, which reduced the duty rate on colored mosaic tiles to 27 per centum ad valorem.

The entry papers were received into evidence unmarked.

The pertinent sections of paragraph 218(f), as modified, are as follows:

Paragraph 218 (f), as modified by T.D. 53865 and T.D. 53877:

All articles (not including table and kitchen articles and utensils) of every description not specially provided for, composed wholly or in chief value of glass, blown or partly blown in the mold or otherwise, or colored, cut, engraved, etched, frosted, gilded, ground (except * * *), painted, printed in any manner, sandblasted, silvered, stained, or decorated, or ornamented in any manner, whether filled or unfilled, or whether their contents be dutiable or free:

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

Other, valued not over $1.66⅔ each (except * * *)_____ 30% ad val.

Paragraph 218 (f), as modified by T.D. 55615:

Table and kitchen articles and utensils, and all articles of every description not specially provided for, composed wholly or in chief value of glass, blown or partly blown in the mold or otherwise, or colored, cut, engraved, etched, frosted, gilded, ground (except * * *), painted, printed in any manner, sandblasted, silvered, stained, or decorated or ornamented in any manner, whether filled or unfilled, and whether their contents be dutiable or free (except * * *):

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

Colored mosaic tiles_____ 27% ad val.

The sole witness called by the plaintiff was Mr. William F. Campbell, Jr., owner of the plaintiff corporation. The business of his firm is the

importation and sale of mosaic tiles, and he is involved in all phases of that business, including merchandising and selling.

The imported merchandise was manufactured in Japan on machinery used in making toy marbles. Liquid glass is poured through a funnel, cut into small chunks, and dropped onto worm gears. In processing these articles, as opposed to manufacturing marbles, the pieces are rolled out on a steel plate while white hot and allowed to sag or flatten. Color agents are added while the glass is in a molten state. Most of the glass is then mounted on mesh backings both for ease in installation and for style. Loose stones also are imported, however, as replacements since the stones often drop off of their backings.

Plaintiff's exhibits 1 and 2 were received in evidence as merchandise similar to the importations covered by the instant protest. Each contains a number of glass pieces fitted together on a very light mesh backing of approximately 6 by 12 inches. The glass articles in exhibit 1 range in color from a deep to a very light shade of blue. Exhibit 2 has the same variations in the color green. There are nine available colors.

The witness further testified that the primary use of exhibits 1 and 2 is on walls and that the most conventional method of application is with the use of white mortar. The mounted merchandise is placed on the mortar and tapped gently allowing surplus mortar to come through the joints forming a grouting joint. Although the construction industry was the market originally envisioned, others in the United States, such as homecraft, use this merchandise for table tops, ashtrays, and the like. The glass pieces are torn off the mesh and applied with glue to the item being decorated. Plaintiff's exhibit 3 was received in evidence as an advertising brochure illustrating the manner in which plaintiff offers such merchandise for sale to its customers. Plaintiff's exhibit 4 is a photograph of an office wall illustrating what Campbell described as the conventional use of the merchandise.

At this point, plaintiff's counsel read the following definitions:

Tile–A plate, or thin piece of fired clay, stone, concrete, or the like, used for roofing, floors, drains, etc., and often for ornamental work.

Mosaic–A surface decoration made by inlaying in patterns small pieces of colored glass, stone, or other material.

The witness testified that he agreed with the definitions and that he considered exhibits 1 and 2 to come within them.

On cross-examination, Mr. Campbell stated that his sales are primarily to tile contractors although some merchandise is sold to mosaic shops. He has personally observed the use of the articles on lamps, table tops, and trays. He also stated that others produce this merchandise and sell it in the United States but that the mesh mounting is his patented process. In defendant's exhibits B, C, and E,

a handicraft catalog and two hobby booklets, the witness identified pictures of trivets, napkin holders, and glass jars which were utilizing merchandise of the type under protest. In each instance, the language describing the pictures referred to the merchandise as "glass globs." Defendant's exhibit D is a photograph of a cigarette box with similar articles affixed to the cover.

On redirect, Campbell emphasized that he does not and did not refer to this merchandise as "glass globs."

Mr. Allen A. Kent, customs examiner at the port of Los Angeles, testified on behalf of the defendant. Two days before the trial, he had visited a retail hobby shop in Los Angeles and purchased a sheet of glass articles (defendant's exhibit A) similar in all respects to plaintiff's exhibits 1 and 2. He testified that he had observed unmounted articles being used in the shop on a lamp and a trivet. It was developed on cross-examination that Mr. Kent's line of examination is food and that he did not possess any particular background or experience with this type of merchandise.

The witness Campbell was recalled by the plaintiff and identified plaintiff's exhibit 5, a brochure illustrating mosaic tiles. He stated that he prepared the brochure and that the merchandise exhibited therein is used in the same manner as exhibits 1 and 2.

It is conceded by the Government in its brief that the imported articles are colored glass. The issue is thus narrowed to a determination of whether or not they are also mosaic tiles.

The plaintiff argues the evidence shows that the merchandise is primarily sold and installed as mosaic tile; that it fits the definitions of "mosaic" and "tile"; and that its demonstrated uses in the construction and handicraft fields are those of mosaic tile.

On the other hand, the defendant maintains that the imported articles do not come within the common meaning of the term "tile," and further, that plaintiff has failed to establish that they are chiefly used for mosaics.

The provision for "colored mosaic tiles" was carved out of paragraph 218(f) in 1962 following the 1960-61 tariff negotiations with the European Economic Community. The only reference made to this merchandise by the trade negotiators is found on page 59 of volume I of the Department of State Publication No. 7349, General Agreement on Tariffs and Trade, Analysis of United States Negotiations, wherein the following descriptive listing appears: "Colored glass tiles for mosaics." Absent controlling judicial interpretations thereof and lacking a claim for commercial designation, the common meaning of the terms used is applicable, and the court may aid its understanding by recourse to dictionaries and other written authorities. *United States* v. *National Carloading Corp. et al.*, 48

CCPA 70, C.A.D. 767; *United States* v. *Mercantil Distribuidora et al.*, 43 CCPA 111, C.A.D. 617.

The following definitions are given for the term "tile":

Funk & Wagnalls New Standard Dictionary (1952) :

glass tile, a glass imitation of a clay tile.

tile, *n.* 1. Arch. (1) a thin piece of baked clay variously shaped and used for covering roofs, floors, walls, mantels, etc., and for lining furnaces, covering melting pots, etc. (2) A plate of porcelain, marble, stone, glass, galvanized iron, etc., employed for ornamental paving, wall-decoration, etc.

Webster's New International Dictionary of the English Language, second edition (1957) :

tile, *n.* 1. A plate, or thin piece, of fired clay, stone, concrete, or the like, of a kind used for covering the roofs of buildings, for floors, walls, drains, furnace linings, etc., and often for ornamental work. Also, a piece of metal used on roofing.

Funk and Wagnalls Standard Dictionary, international edition (1963) :

tile, *n.* 1. A thin piece or plate of baked clay, sometimes decorated, used for covering roofs, floors, etc., and as an ornament.

The New Century Dictionary (1946) :

tile, *n.* A thin slab, plate, or shaped piece of baked clay, sometimes glazed and ornamented, used for covering roofs, lining walls, paving floors, draining land, in ornamental work, etc.; any of various similar slabs or pieces, as of stone or metal; * * *.

Encyclopaedia Britannica, volume 22, 1947, page 213 :

tile, a thin flat slab, usually of burned clay, glazed or unglazed, used either structurally or decoratively in building. * * *

The descriptive notion of the term "tile" common to these definitions is that of a thin or flat plate, or slab, of merchandise. We agree with the defendant that the spheroidal-shaped glass articles before the court do not appear to be fairly embraced within such definitions.

Moreover, although plaintiff's witness Campbell definitely testified that he considered the imports mosaic tiles, he also variously referred to them as "stones" (R. 8, 9) and "spheroidal bubbles" (R. 37). More importantly, they are referred to as "jewels" and as "Gemstone-like spheroidal glass mosaic" in plaintiff's exhibit 3, the advertising literature used in merchandising this product. By striking contrast, when trading in the small flat squares represented in plaintiff's exhibit 5, Campbell's firm's literature describes them as "* * * vitreous glazed tiles * * * Mesh mounted * * *." Added to this is the fact that other firms make and sell these glass items, and, as revealed by defendant's

exhibits B, C, and E, they are being merchandised as other than tile products.

While it is clear from the evidence that the imports possess some uses in common with tile, e.g., on walls or in ornamental work, this fact alone does not make them tile. They do not readily fit within the dictionary meanings, and it does not appear that they are actually offered, bought, or sold as tile. We hold that, on the record before us, it has not been established that the imported glass articles are within the common meaning of the term "tile." Since plaintiff has failed in its proof on this issue, it is unnecessary to consider whether the items are "mosaic" or not.

For the foregoing reasons, the protest in this case is overruled and judgment will issue accordingly.