APEX UNIVERSAL, INC., PLAINTIFF *v.* UNITED STATES, DEFENDANT

Court No. 95–03–00330

(Decided May 21, 1998)

*Grunfeld, Desiderio, Lebowitz & Silverman LLP (Steven P. Florsheim)* for plaintiff.
*Frank W. Hunger*, Assistant Attorney General; *Joseph I. Liebman*, Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, U.S. Department of Justice *(Amy M. Rubin);* and *Mitra Hormozi*, Office of Assistant Chief Counsel, International Trade Litigation, U.S. Customs Service, of counsel, for defendant.

## MEMORANDUM OPINION

DICARLO, *Senior Judge:* This action is before the court on cross-motions for summary judgment. Plaintiff challenges the United States Customs Service tariff classification of ceramic raised pavement markers under the Harmonized Tariff Schedule of the United States ("HTSUS") subheading 6908.90.00 as "Glazed ceramic flags and paving, hearth or wall tiles * * *: Other" subject to a duty rate of 19 percent *ad valorem.* HTSUS § XIII, ch. 69 (Supp. 1 1993 & Supp. 2 1994).

Plaintiff seeks summary judgment under U.S. Ct. Int'l Trade R. 56(a) in favor of its claimed classification of the markers under HTSUS subheading 6905.90.00 as "Roofing tiles * * * and other ceramic constructional goods: Other" at 4.9 percent *ad valorem*, or, in the alternative, under subheading 6909.19.50 as "Ceramic wares for laboratory, chemical or other technical uses * * *: Other: Other" at 8 percent *ad valorem*, or, in a second alternative, under subheading 6914.90.00 as "Other ceramic articles: Other" at 8 percent *ad valorem. Id.*

Defendant moves for summary judgment sustaining Customs' classification.

The Court has jurisdiction under 28 U.S.C. § 1581(a) (1994).

## BACKGROUND

1. *Subject Merchandise:*

Apex Universal, Inc. ("Apex") imports ceramic raised pavement markers from Taiwan through the port of Los Angeles. The pavement markers range in base size and shape from 4-inch diameter circular to 4-inch by 6-inch rectangular with either pyramidal or rounded upper surfaces. All markers are less than 3.2 centimeters in thickness. They are made of clay or a mixture of clay and other ceramic materials, with a glazed face, and fired above red heat to a temperature sufficiently high to produce specific physical properties and characteristics, including the ability to withstand weights of 1,000 pounds or more. The finished markers are cemented to road surfaces at fixed intervals to demarcate lanes, cross walks, turn lanes and shoulders. The markers are designed to alert drivers to roadway boundaries.

## 2. *Parties' Claims:*

The tiles at issue are commonly known in trade or commerce as "Bott's dots" (named after their inventor) or "pavement markers." As there is no HTSUS provision for ceramic pavement markers, Customs classified the tiles as ceramic paving tiles. The parties disagree on the meaning of the term "paving tile" and whether the imported markers fit within the meaning of the term as used in the HTSUS.

Plaintiff argues that the markers are not paving tiles because 1) they are not used to cover a surface, but are placed at intervals along the edge of roadway lanes; and 2) they are not thin and flat, but are convex or spheroidal in shape. Plaintiff claims that, because the markers become part of the roadway surface, they should be considered "constructional goods." In the alternative, plaintiff argues that the markers should be classified as "ceramic wares for technical uses" because they serve a safety function in keeping drivers alert and aware of roadway boundaries. In a second alternative, plaintiff argues that the markers should be classified in the basket provision for "other ceramic articles."

Defendant responds that 1) tiles need not cover a surface in its entirety and 2) it is the function of the tiles that governs their classification, not their shape. Defendant argues that the pavement markers were correctly classified as "ceramic paving tiles" because they are consistent with the HTSUS definition of paving tiles in terms of size, shape, manufacture, and function.

## 3. *Relevant HTSUS Provisions:*

Apex imported the merchandise in 1993 and 1994. The relevant HTSUS provisions in effect during that time read as follows:

*Customs' classification:*

| | | |
|---|---|---|
| 6908 | Glazed ceramic flags and paving, hearth or wall tiles; glazed ceramic mosaic cubes and the like, whether or not on a backing: | |
| 6908.90.00 | Other ................................. | 19% |

*Plaintiff's alternatives:*

| | | |
|---|---|---|
| 6905 | Roofing tiles, chimney pots, cowls, chimney liners, architectural ornaments and other ceramic constructional goods: | |
| 6905.90.00 | Other ................................. | 4.9% |
| 6909 | Ceramic wares for laboratory, chemical or other technical uses; ceramic troughs, tubs and similar receptacles of a kind used in agriculture; ceramic pots, jars and similar articles of a kind used for the conveyance or packing of goods: Ceramic wares for laboratory, chemical or other technical uses: | |
| 6909.19.50 | Other: Other ........................... | 8% |

6914        Other ceramic articles:

6914.90.00     Other ................................. 8%

HTSUS § XIII, ch. 69 (Supp. 1 1993 & Supp. 2 1994).

Classification of merchandise under the HTSUS is carried out in accordance with the General Rules of Interpretation. HTSUS General Rule of Interpretation 1 provides that "classification shall be determined according to the terms of the headings and any relative section or chapter notes[.]" *Id.*, Gen. R. Interpretation 1.

The term "tile" is not fully defined in the tariff schedule. The HTSUS specifies only the thickness of the article to be classified: "[f]or the purposes of headings 6905, 6907 and 6908, the term *"tiles"* does not include any article 3.2 cm or more in thickness." *Id.* § XIII, ch. 69 Additional Note 4. The parties do not dispute the fact that the pavement markers are less than 3.2 cm thick.

The Harmonized Commodity Description and Coding System Explanatory Notes, which are the official interpretation of the Harmonized System by the Customs Co-operation Council (now the World Customs Organization), state the following descriptions for heading 69.07:

> [C]eramic flags and tiles * * * commonly used for paving or for facing walls, hearths, etc * * *.
>
> Flags and paving, hearth or wall tiles are thinner in relation to their surface dimensions than are building bricks. * * * [F]lags and tiles are more especially intended for fixing by cement, adhesive or by other means to the surface of existing walls, etc. They * * * are usually flat and * * * are designed to be placed side by side without overlapping. Flags are larger than tiles and are usually rectangular; tiles may be of other geometric shapes (hexagonal, octagonal, etc.). Tiles are mainly used for facing walls, mantelpieces, hearths, floors and paths * * *.
>
> Certain ceramic tiles are used solely for paving; unlike bricks, they are usually cubic or in the form of truncated pyramids. * * *
>
> The classification of goods in this heading is therefore determined by their shape and size, rather than by their composition * * *.
>
>   *      *      *      *      *      *      *
>
> Subject to the above conditions, the heading also includes:
>
> > (1) Bordering, capping, skirting, frieze, angle, corner or other fitting tile pieces employed for finishing off the facing, paving, etc., work.

3 Customs Co-operation Council, *Harmonized Commodity Description and Encoding System: Explanatory Notes* § XIII, ch. 69, heading 69.07 (1st ed. 1986) [hereinafter *Expl. Notes*]. Heading 6908 covers "those articles of the previous heading [69.07] which *have been glazed*, frequently after some form of decoration[.]" *Id.* heading 69.08.

STANDARD OF REVIEW

The meaning of a tariff term is a question of law. *Totes, Inc. v. United States*, 69 F.3d 495, 497–98 (Fed. Cir. 1995). Where, as in this case, there are no material facts in dispute and only questions of law remain, no deference attaches to Customs' classification decision, *Rollerblade, Inc. v. United States*, 112 F.3d 481, 484 (Fed. Cir. 1997).

Where the meaning of a tariff term is at issue, the Court must determine its proper meaning and "whether the merchandise at issue comes within the description of such [term] as properly construed." *Sports Graphics, Inc. v. United States*, 24 F.3d 1390, 1391 (Fed. Cir. 1994). The court must consider "whether the government's classification is correct, both independently and in comparison with the importer's alternative." *Jarvis Clark Co. v. United States*, 733 F.2d 873, 878 (Fed. Cir. 1984).

When a tariff term is not defined in either the statute or by legislative history, its correct meaning is the common meaning understood in trade or commerce. *See Schott Optical Glass, Inc. v. United States*, 612 F.2d 1283, 1285 (C.C.P.A. 1979). The court may rely upon its own understanding of terms used and may consult standard lexicographic and scientific authorities, dictionaries, and other reliable sources of information to determine their common meaning. *Medline Indus., Inc. v. United States*, 62 F.3d 1407, 1409 (Fed. Cir. 1995); *Lynteq, Inc. v. United States*, 976 F.2d 693, 697 (Fed. Cir. 1992). The court also may refer to the Explanatory Notes of a tariff subheading, which do not constitute controlling legislative history but nonetheless are intended to clarify the scope of HTSUS headings and offer guidance in interpreting headings and subheadings. *Mita Copystar America v. United States*, 21 F.3d 1079, 1082 (Fed. Cir. 1994).

DISCUSSION

1. *Summary Judgment:*

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." U.S. Ct. Int'l Trade R. 56(d); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986); *Texas Apparel Co. v. United States*, 12 CIT 1002, 1004, 698 F.Supp. 932, 934 (1988), *aff'd*, 883 F.2d 66 (Fed. Cir. 1989).

Both parties submitted statements of undisputed facts pursuant to USCIT Rule 56(i). The only material dispute is a question of law regarding the meaning of various tariff terms and the scope of competing tariff provisions. Because there are no genuine disputes over material facts, this case is ripe for summary judgment. *See, e.g., Anderson*, 477 U.S. at 247–48; *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *Sweats Fashions, Inc. v. Pannill Knitting Co.*, 833 F.2d 1560, 1562–1563 (Fed. Cir. 1987).

## 2. *Classification as "Ceramic Paving Tile":*

According to defendant, the markers meet HTSUS requirements for paving tiles. Defendant argues that the Explanatory Notes say only that tiles are "usually" flat. In addition, the tiles may be used to cover *part* of a surface, they need not cover an entire surface.

Defendant notes that the cases cited in plaintiff's briefs predate the invention of the pavement markers at issue here and, further, that neither case suggests that tiles must cover a surface in its entirety. *See United States v. Davis*, 54 F. 147, 149 (8th Cir. 1893) ("tile" means a covering; pieces of marble properly classified as tiles because intended to form mosaic pavement); *Los Angeles Tile Jobbers, Inc. v. United States*, 59 Cust. Ct. 256, C.D. 3132 (1967) (spheroidal pieces of glass not "colored mosaic tiles" because not thin or flat plate or slab). Defendant adds that an 1892 case relied upon by the *Davis* court relied on testimony that paving tiles are baked hard to stand the wear and tear of being walked and trod upon. *See Rossman v. Hedden*, 145 U.S. 561, 564 (1892). Thus, according to defendant, the crucial characteristic of the markers is that they are strong enough to walk on, in accordance with the common understanding of tiles as "suitable for and intended to be used as a covering for a floor, a pavement, or the like." *Davis*, 54 F. at 151.

The Explanatory Notes state that "classification of goods in this heading [69.07] is * * * determined by their shape and size, rather than by their composition[.]" *Expl. Notes* heading 69.07, para. 4. The Notes further state that tiles are used mainly for facing walls, floors and paths. *Id.* para. 2. Dictionary entries indicate that tiles are used to cover roofs, line ovens or walls, and pave floors. *See, e.g.*, 18 *Oxford English Dictionary* 86 (2d. ed. 1989) ("A thin slab of burnt clay, shaped according to the purpose for which it is required; * * * flat for lining ovens, etc.; flat, usually glazed * * * when used to pave floors, or line walls, fire-places, etc."); *Webster's Third New International Dictionary* 2,393 (unabridged 1993) ("flat or curved piece of fired clay, stone, concrete, or other material used esp. for roofs, floors, or walls and often for such work of an ornamental nature").

A surface may be "covered" in the sense of tiles being "placed on or often over the whole surface of: [to] envelop, film, coat" or in the sense of tiles appearing "here and there on the surface of: [to] dot or dapple." *Webster's* at 524 (definitions 4a & 4c of verb "to cover"). As defendant notes, the HTSUS states only that tiles *usually* cover a surface. In fact, tiles may be used to create a finished edge for a main surface. *Expl. Notes* heading 69.07, para. 6. Tiles also may be used for ornamentation. Ornamentation is defined as a "decorative device: embellishment." *Webster's* at 1,592. In this case, the markers are intended for functional rather than decorative use.

The pavement markers do not fit within the shape or functional parameters for paving tiles. While they meet the statutory criterion for thickness (i.e., they are less than 3.2 centimeters in thickness), they

have convex, rather than flat upper surfaces, as would be appropriate for paving tiles. The markers are not used to "cover," "line," "face," or otherwise create a tiled surface; rather, they are attached to an existing, paved surface. Nor are the markers designed to "finish off" the edging of a paved surface; they are not placed at the very edge of a roadway, but are placed to create a warning before a vehicle approaches the edge. Furthermore, they are not placed side by side, but are placed at intervals to create a linear, raised texture that disrupts an existing surface in order to demarcate roadway boundaries. While the markers are, indeed, strong enough to walk on—in fact, as defendant notes, they are strong enough to drive over—they are not suitable for paving a floor, a pedestrian pathway or a vehicular roadway according to the customary usage of paving tiles. For these reasons, the Court finds that the pavement markers are not classifiable as "paving tiles" under HTSUS heading 6908.

### 3. *Classification as "Other Constructional Goods":*

Plaintiff argues that the pavement markers should be considered "other constructional goods" under HTSUS 6905.90.00 rather than "paving tiles" because they are designed to be used in the construction of roadways and, in some states, are a mandatory component of roadway construction. The Court disagrees.

Under the rule of *ejusdem generis*, constructional goods under HTSUS heading 6905 are limited to those used in the construction of architectural structures such as buildings and similar edifices—not roadways. *Ejusdem generis*, meaning "of the same kind," dictates that "where an enumeration of specific things is followed by a general word or phrase, the general word or phrase is held to refer to things of the same kind as those specified." *Sports Graphics*, 24 F.3d at 1392 (citation omitted). In classification cases, "*ejusdem generis* requires that the imported merchandise possess the essential characteristics or purposes that unite the articles enumerated *eo nomine* in order to be classified under the general terms." *Id.*; *Totes, Inc. v. United States*, 18 CIT 919, 923–24, 865 F. Supp. 867, 871 (1994) (citing *Sports Graphics*), *aff'd*, 69 F.3d 495 (Fed. Cir. 1995).

The Explanatory Notes for this heading refer to items "which, like bricks, are used in constructional or building work." *Expl. Notes* heading 69.05. Examples enumerated in heading 6905 include "roofing tiles, chimney pots, cowls, chimney liners, architectural ornaments and other ceramic constructional goods[.]" HTSUS heading 6905. Despite the fact that the notes refer to "constructional or building work," the enumerated list suggests that goods under this heading are either 1) an integral element for the creation of a building structure, or 2) an item attached to an already completed building structure for either a decorative or a functional purpose.

The pavement markers are designed specifically to be attached to a finished road surface. They are not intended for use in building

construction. Under the rule of *ejusdem generis*, then, the markers do not fit within the meaning of HTSUS heading 6905.

### 4. Classification for "Laboratory, Chemical or Other Technical Uses":

Plaintiff argues in the alternative that the markers should be classified as "Ceramic wares for laboratory, chemical or other technical uses * * * Other * * * Other" under HTSUS subheading 6909.19.50. Plaintiff claims that the category is sufficiently broad to include the markers, which are used for the technical purpose of alerting motorists to roadway boundaries by providing a visual, audible and sensory signal.

Items enumerated under the general HTSUS heading of 6909 include, *inter alia*, crucibles, laboratory dishes, combustion tubes, pumps, valves, vats, ceramic tubs, troughs, pots, and jars. *Expl. Notes* heading 69.09. The unifying characteristics of items under this heading are ceramic composition and utility as an instrument or container to facilitate a "technical" process, whether it be a chemical experiment in a laboratory or storage and conveyance of an agricultural product.

The *Webster* and *Oxford* dictionaries define "technical" as "having special usu[ally] practical knowledge esp[ecially] of a mechanical or scientific subject[,]" *Webster's* at 2,348 (def. 1a), and "appropriate or peculiar to, or characteristic of, a particular art, science, profession, or occupation; also, of or pertaining to the mechanical arts and applied sciences generally," 17 *Oxford English Dict.* at 703 (def. 3a).

The pavement markers are stationary attachments to a roadway surface. While they are ceramic, they are not designed or used to facilitate any special mechanical or scientific process. For this reason, the markers are not classifiable under this heading.

### 5. Classification as "Other" in the Basket Provision:

In a second alternative, plaintiff argues that the pavement markers should be classified as "Other ceramic articles * * * Other[,]" under 6914.90.00, the catch-all basket provision for ceramic articles which are not porcelain or china. The Court notes that Customs has determined that 6-inch, round pavement markers which exceed 3.2 centimeters in height (as compared to 4-inch round or 4-inch-by-6-inch rectangular and elliptical markers) are classifiable under this basket provision.

Classification of imported merchandise in a basket provision is appropriate only when there is no tariff category that covers the merchandise more specifically. Ruth F. Sturm, 2 *Customs Law & Administration* § 52.8 at 78 (3d ed. 1997) (citing Treas. Dec. 17,159 (1896) (G.A. 3476), *reprinted in* 1896 *Synopsis of Decisions* 425, 426. The pavement markers are ceramic goods which fall within Chapter 69 of the HTSUS, but they do not meet the criteria for any of the provisions discussed above or any of the remaining, more specific provisions within the chapter. The Court therefore finds that they are properly classifiable under HTSUS 6914.90.00.

CONCLUSION

The Court finds that Customs incorrectly classified the ceramic raised pavement markers under HTSUS 6908.90.00 and that the markers are properly classified under HTSUS 6914.90.00 as "Other ceramic articles * * * Other." Judgment will be entered for the plaintiff.